**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARIAN ULBERG, DEANE PETZEL, JESSICA MILLER and KELLY EBSARY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>GRÜNS NUTRITION, INC. and UNILEVER UNITED STATES, INC.,<br><br>Defendants. | Civil Action No. ___________________<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Deane Petzel, Jessica Miller, Kelly Ebsary and Marian Ulberg ("Plaintiffs") bring this class action complaint on behalf of themselves and all others similarly situated for damages, injunctive relief, restitution, and any other available legal or equitable remedies arising from the unlawful conduct of defendant Grüns Nutrition, Inc. ("Grüns") and defendant Unilever United States, Inc. ("Unilever") (Grüns and Unilever are the "Defendants"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on their personal knowledge.

## INTRODUCTION

1. This action concerns the deceptive labeling, marketing, and sale of Defendants' allulose-sweetened dietary supplement gummies labeled "Sugar Free" (the "Products"), which are identified individually at Paragraph 35 below. Defendants label the Products "Sugar Free" on the front of the package and declare in the "Supplement Facts" panel that each serving contains no more than half a gram of Total Sugars. Each statement is false, and Plaintiffs plead each in the

alternative to the other. Each labeled serving of the Products contains between 6 and 9 grams of allulose, and allulose is a sugar.[1]

2. Defendants do not conceal the quantity. It prints it. On the same package that bears the "Sugar Free" claim, beneath a headline announcing the Product's net carbohydrates, Defendants set out their own arithmetic. Defendants' Firecracker Product is illustrative; the corresponding headline and equation for each of the twelve Products are set out at Paragraph 45 below:




Grüns x Popsicle Firecracker Sugar Free Superfoods Greens Gummies package (Ex. 1).

3. Allulose is a monosaccharide. Federal regulation defines the sugars content of a food by chemistry: "Total sugars shall be defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." 21 C.F.R. § 101.9(c)(6)(ii). Allulose is a free monosaccharide. It is therefore a sugar within the meaning of that regulation.

4. Federal regulation also fixes the ceiling for a "Sugar Free" claim. A food "may not be labeled" "Sugar Free," "free of sugar," "no sugar," "zero sugar," "without sugar," or "sugarless" unless "[t]he food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving." 21 C.F.R. § 101.60(c)(1)(i). The labeled serving of each Product is 15 or 20 grams. That serving contains between 6 and 9 grams of sugar

[1] *See* 21 C.F.R. § 101.36 (defining the Supplement Facts panel and panel requirements for dietary supplements).

— between twelve and eighteen times the amount federal law permits in a product labeled "Sugar Free."

5. The same allulose falsifies the Supplement Facts panel. For a dietary supplement, total sugars must "be declared when [it is] present in a dietary supplement in quantitative amounts by weight that exceed the amount that can be declared as zero in nutrition labeling of foods in accordance with § 101.9(c)." 21 C.F.R. § 101.36(b)(2)(i). That amount is half a gram. Every Product exceeds it by at least a factor of twelve. As to two of Defendants' product lines the panel does not merely understate the figure: it declares "Total Sugars 0 g" on a package that states the product contains 7 or 9 grams of allulose. Defendants' declaration is not an omission. It is an affirmative misstatement of a quantity Defendants know.

6. The allulose in the Products is not a trace additive. It is the sweetener, and it is the first-listed ingredient in the Products' "Other Ingredients" declaration.

7. Defendants sell a cane-sugar version of every Product, marketed as "Low Sugar." The ingredient declarations are the same but for the sweetener. Taking the Grüns Adult Sugar Free Superfoods Greens Gummies as the example: its cane-sugar counterpart declares the same 15 grams of total carbohydrate, the same 6 grams of dietary fiber and the same 8.7-gram Core Nutrients Blend — and 8 grams of Total Sugars, and 8 grams of Added Sugars. Defendants replaced 8 grams of cane sugar with 8 grams of allulose and labeled the result "Sugar Free."

8. The representation is material. A consumer who selects a product labeled "Sugar Free" is making a decision about sugar. Defendants designed the Products, and the front panel of their packaging, to be selected by exactly that consumer.

9. Plaintiffs and the members of the Class did not receive what they paid for. They paid for a sugar-free dietary supplement and received a dietary supplement containing between 6 and 9 grams of sugars in every serving.

10. Plaintiffs bring this action individually and on behalf of a nationwide class of purchasers of the Products, and on behalf of statewide subclasses of New York, California and Pennsylvania purchasers, for violations of those States' consumer protection statutes, for breach of express and implied warranties, and, in the alternative, for unjust enrichment.

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action in which the aggregate claims of all members of the proposed Class exceed $5,000,000 exclusive of interest and costs, there are more than 100 members of the putative Class, and at least one member of the putative Class is a citizen of a State different from Defendants. Grüns is a citizen of Delaware, where it is incorporated, and of Oregon, where it maintains its principal place of business. Unilever is a citizen of Delaware, where it is incorporated, and of New Jersey, where it maintains its principal place of business. Plaintiffs Petzel and Miller are citizens of Pennsylvania, Plaintiff Ebsary is a citizen of California and Plaintiff Ulberg is a citizen of New York.

12. This Court has personal jurisdiction over Defendants. Unilever is subject to general personal jurisdiction in this District because its principal place of business is in Hoboken, New Jersey. Grüns purposefully directs its business toward New Jersey by labeling, marketing, distributing and selling the Products to New Jersey consumers through national retailers operating stores in New Jersey and through its direct-to-consumer website, and is now owned by a company

headquartered in this District. The claims in this action arise directly out of and relate to Defendants' New Jersey contacts.

13. Defendants' cultivation of the New Jersey market is deliberate and documented. Defendant Unilever's principal place of business is in this District. Defendant Grüns is the "Official Foundational Nutrition Partner" of Gotham FC, the National Women's Soccer League club that represents New Jersey and plays its home matches in Harrison, New Jersey, and pays to place its brand on the club's playing kit and on advertising inside that New Jersey stadium. Ex. 6.[2]

14. Defendants did not merely permit the Products to reach New Jersey through the stream of commerce. It paid to advertise them here, and it sells them here through national retailers and through its own website.

15. The claims of the Class arise out of the same conduct by Defendants in the same respects, and are exemplified by the claims of each Plaintiff. The labeling challenged in this action is uniform across the Products wherever they are sold.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are subject to personal jurisdiction in this District with respect to this action and is therefore deemed to reside here under 28 U.S.C. § 1391(c)(2). Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including Defendants' marketing of the Products in New Jersey, the distribution and sale of the Products in New Jersey, and the direction of Defendants' United States business from this District.

---

[2] Gotham FC and Grüns Forge Strategic Partnership Centered on Foundational Nutrition, Gotham FC (May 1, 2025).

**PARTIES**

17. Plaintiff Marian Ulberg ("Ulberg") is a citizen of New York who resides in Oakdale, New York. Ulberg has purchased the Products for her household on multiple occasions over the last year, from merchants including Target. Ulberg limits her sugar intake and reads front-of-package sugar claims before purchasing. Each time Ulberg purchased the Products, Ulberg relied on Defendants' statement that the Products are "Sugar Free." Ulberg understood that statement to mean that the Products contained no sugar. Had Ulberg known that each serving contained between 6 and 9 grams of allulose and that allulose is a sugar, Ulberg would not have purchased the Products or would have paid substantially less for them. Ulberg would purchase the Products again if they were truthfully labeled, but cannot presently do so, because Ulberg has no way to determine whether a "Sugar Free" claim on a package she encounters is true.

18. Plaintiff Kelly Ebsary ("Ebsary") is a citizen of California who resides in Yucca Valley, San Bernardino County, California. Ebsary has purchased the Grüns Superfoods Greens Gummies (Sugar-Free) both directly from Defendants at https://Grüns.co and from Sprouts, beginning in 2025 and continuing to the present. Ebsary purchased the Products in large part due to Defendants' representation that the Products were sugar free. Ebsary understood that representation to mean that the Products contained no sugar. Ebsary limits her sugar intake and reads front-of-package sugar claims before purchasing. Had Ebsary known that each labeled serving of the Products contained between 6 and 9 grams of sugars, Ebsary would not have purchased the Products, would have purchased fewer of them, or would have paid less for them. Ebsary would purchase the Products again if they were truthfully labeled, but cannot presently do so, because Ebsary has no way to determine whether a "Sugar Free" claim on a package Ebsary encounters is true.

19. Plaintiff Deane Petzel ("Petzel") is a citizen of Pennsylvania who resides in Dunbar, Pennsylvania. Petzel has purchased the Grüns Superfoods Greens Gummies (Sugar-Free) both directly from Defendants at https://Grüns.co and from https://amazon.com over the past six months. Those purchases were delivered to Petzel in Pennsylvania. Petzel purchased the Products in large part due to Defendants' representation that the Products were sugar free. Petzel understood that representation to mean that the Products contained no sugar. Petzel limits her sugar intake and reads front-of-package sugar claims before purchasing. Had Petzel known that each labeled serving of the Products contained between 6 and 9 grams of sugars, Petzel would not have purchased the Products, would have purchased fewer of them, or would have paid less for them. Petzel would purchase the Products again if they were truthfully labeled, but cannot presently do so, because Petzel has no way to determine whether a "Sugar Free" claim on a package Petzel encounters is true.

20. Plaintiff Jessica Miller ("Miller") is a citizen of Pennsylvania who resides in York, Pennsylvania. Miller has purchased the Grüns Superfoods Greens Gummies (Sugar-Free) since approximately January 2026, primarily from Walmart retail store locations in Pennsylvania and also through the Walmart shopping application. Miller purchased the Products in large part due to Defendants' representation that the Products were sugar free. Miller understood that representation to mean that the Products contained no sugar. Miller limits her sugar intake and reads front-of-package sugar claims before purchasing. Had Miller known that each labeled serving of the Products contained between 6 and 9 grams of sugars, Miller would not have purchased the Products, would have purchased fewer of them, or would have paid less for them. Miller would purchase the Products again if they were truthfully labeled, but cannot presently do so, because

Miller has no way to determine whether a "Sugar Free" claim on a package Miller encounters is true.

21. Each Plaintiff purchased the Products for personal, family or household use and not for resale.

22. Defendant Grüns is a corporation organized under the laws of the State of Delaware, incorporated on August 5, 2022, under Delaware file number 6954130, with its principal place of business and headquarters in Beaverton, Oregon. Its registered agent is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, New Castle County, Delaware 19801. Ex. 5.[3]

23. Defendant Unilever is a corporation organized under the laws of the State of Delaware[4] with its principal place of business in Hoboken, New Jersey.[5] Unilever is the United States operating company of the Unilever group, one of the largest consumer goods businesses in the world. Its United States business comprises segments that include Beauty & Wellbeing, Personal Care, Home Care and Foods, and it manufactures, markets, distributes and sells foods, dietary supplements and personal care products throughout the United States under brands including Dove, TRESemmé, Vaseline, Degree, Hellmann's and Knorr. In 2025, Unilever opened its United States headquarters at the Waterfront Corporate Center, 111 River Street, Hoboken, New Jersey.

---

[3] Del. Dep't of State, Div. of Corps., Entity Details for Grüns Nutrition, Inc., File No. 6954130.

[4] Del. Dep't of State, Div. of Corps., Entity Details for Unilever United States, Inc., File No. 842944 (incorporated August 31, 1977; entity kind Corporation; residency Domestic; State of Delaware; registered agent The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801) (Ex. 5).

[5] Unilever, Unilever Opens New U.S. Headquarters in Hoboken, NJ, https://www.unileverusa.com/news/press-releases/2025/unilever-opens-new-us-headquarters-in-hoboken-nj/ (last visited Aug. 30, 2026) (recording the relocation of Unilever's United States headquarters to 111 River Street, Hoboken, New Jersey).

24. Unilever completed its acquisition of Grüns on June 1, 2026, and Grüns is now part of the Unilever Wellbeing business.

25. Grüns designed, labeled, marketed, distributed and sold the Products at all times relevant to this action. Since June 1, 2026, Unilever has owned and operated the Grüns business, and the Products have continued to be labeled, marketed, distributed and sold in the same manner and bearing the same "Sugar Free" claim. Unilever is liable for the conduct alleged in this Complaint occurring on and after June 1, 2026, as the owner and operator of that business.[6]

26. Unilever announced on April 9, 2026, that it had signed an agreement to acquire Grüns, and completed the acquisition on June 1, 2026. Unilever stated that Grüns "is now part of the Unilever Wellbeing business." Unilever has not disclosed the terms of the transaction. Since completion the Products have continued to be labeled, marketed, distributed and sold in the same manner and bearing the same "Sugar Free" claim. Plaintiffs seek injunctive relief and damages from Unilever for the conduct alleged in this Complaint occurring on and after June 1, 2026.[7]

27. The Products are formulated, manufactured, labeled, marketed, advertised, distributed and sold throughout New Jersey and the United States through Defendants' direct-to-consumer website at https://Grüns.co and through Amazon, Target and other online and physical retailers in New Jersey and throughout the country. The Products' packaging bears a distributor

---

[6] Grüns Nutrition, Inc., Form D, Notice of Exempt Offering of Securities (SEC filed Apr. 4, 2025) (CIK No. 0002034389).

[7] Unilever, Unilever to acquire U.S. Greens Supplement company Grüns (Apr. 9, 2026), https://www.unilever.com/news/press-and-media/press-releases/2026/unilever-to-acquire-us-greens-supplement-company-Grüns/ (last visited Aug. 31, 2026) ("The terms of the deal were not disclosed"; update recording that "Unilever completed its acquisition of Grüns on 1 June, 2026, and the company is now part of the Unilever Wellbeing business."). The terms of the transaction, including the extent and timing of Unilever's acquisition of ownership, have not been disclosed and are within Defendants' knowledge. Plaintiffs reserve the right to amend to assert claims against Unilever in respect of conduct occurring before June 1, 2026, once those terms are established in discovery.

statement identifying Grüns Nutrition, Inc. Defendants are responsible for the content of the Products' labels.[8]

28. At all relevant times, each Defendant acted through its officers, directors, employees and agents, each of whom acted within the course and scope of his or her employment or agency.

## FACTUAL ALLEGATIONS

### A. Plaintiffs' State Law Claims are Consistent with Federal Requirements

29. Plaintiffs seek to hold Defendants liable under State law for their unfair trade practices, consumer fraud, false advertising, and other unlawful conduct. Such conduct also violates federal labeling requirements already in force. Plaintiffs do not seek to impose requirements greater than those required by federal law. Plaintiffs' State law claims do not seek to expand upon, or call for stricter standards than, the labeling requirements established by the regulations of the Food and Drug Administration.

30. Plaintiffs also do not seek to require Defendants to add any statement to the Products' labels that federal law does not already require, or to remove any statement that federal law requires. Plaintiffs seek only what 21 C.F.R. § 101.60(c)(1) already commands: that a dietary supplement containing between 6 and 9 grams of sugars per labeled serving not be labeled "Sugar Free."

[8] Grüns Adult Sugar Free Superfoods Greens Gummies, Target, https://www.target.com/p/Grüns-adult-sugar-free-superfoods-greens-gummies-96ct-12-servings/-/A-93215054; Grüns Kids Sugar Free Superfoods Greens Gummies, Target, https://www.target.com/p/gr-252-ns-kids-39-sugar-free-superfoods-greens-gummies-180g-12-servings/-/A-94937930; Adult Greens Sugar Free Gummies, Walmart, https://www.walmart.com/ip/14289809117; and the Amazon Grüns brand store (Ex. 8) (all last visited Aug. 30, 2026). The Products are also stocked at Sprouts (Ex. 23) and, together with the cane-sugar versions, at Sam's Club and Costco.

31. Congress has provided that "a dietary supplement shall be deemed to be a food within the meaning of this chapter." 21 U.S.C. § 321(ff). A food is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1). The Products are misbranded.

32. Two independent violations arise from the same package, and Plaintiffs plead them in the alternative. First, the front-panel "Sugar Free" claim is a nutrient content claim that violates 21 C.F.R. § 101.60(c)(1). Second, and separately, the Total Sugars declaration inside the Supplement Facts panel violates 21 C.F.R. § 101.36(b)(2)(i). Either violation independently establishes that the Products' labeling is false. Neither depends on the other.

33. Plaintiffs' claims do not depend on any State requirement that differs from federal law. They depend on State laws prohibiting the sale of a product by means of a false statement, applied to a statement that federal regulation independently forbids.

**B. B. The Products.**

34. Defendants sell dietary supplements in gummy form under the "Grüns" brand and under the related "immün" and "nütrops" brands. Across its product lines Defendants offer each gummy in two formulations: a cane-sugar formulation marketed as "Low Sugar," and an allulose-sweetened formulation marketed as "Sugar Free."

35. The Products challenged in this action are the allulose-sweetened dietary supplement gummies that Defendants label "Sugar Free," comprising:

a. the Grüns Adult Sugar Free Superfoods Greens Gummies, Original strawberry flavor, sold year-round through national retailers and through Grüns.co (the "Original Product") (Ex. 2);

b. the Grüns x Popsicle "Firecracker" Sugar Free Superfoods Greens Gummies, a limited-time offering in a co-branded package (the "Firecracker Product") (Ex. 1);

c. the Grüns Adult Sugar Free Superfoods Greens Gummies, Sweet & Juicy Mango flavor (the "Mango Product") (Ex. 9);

d. the Grüns Minions Sugar Free Superfoods Greens Gummies, "Bello Banana Berry" flavor, in a package co-branded with Illumination's Minions under licence from Universal (the "Minions Product") (Ex. 17);

e. the Grüns Sugar Free Superfoods Greens Gummies, Raspberry Lemonade flavor (the "Raspberry Lemonade Product") (Ex. 23);

f. the Kids Grüns Sugar Free Superfoods Greens Gummies, Strawberry Burst flavor, marketed for children (the "Kids Product") (Ex. 10);

g. the Kids Grüns Minions Sugar Free Superfoods Greens Gummies, "Bello Banana Berry" flavor, marketed for children aged 2 to 13 (the "Kids Minions Product") (Ex. 19);

h. the Kids Grüns x Popsicle "Firecracker" Sugar Free Superfoods Greens Gummies, marketed for children aged 2 to 13 (the "Kids Firecracker Product") (Ex. 21);

i. the Kids Grüns Sugar Free Superfoods Greens Gummies, Raspberry Lemonade flavor, marketed for children aged 2 to 13 (the "Kids Raspberry Lemonade Product") (Ex. 25);

j. Defendants' immün Sugar Free 13-in-1 Immunity Gummies, Sour Pineapple flavor, in both the 60-gram and the 240-gram pack sizes (together, the "immün Products") (Ex. 11); and

k. Defendants' nütrops Sugar Free Functional Nootropics Gummies, Lemon Clouds flavor (the "nütrops Product") (Ex. 12).

36. The Products are substantially similar to one another in every respect material to this action. Each is a dietary supplement gummy sold in daily packs. Each declares allulose as its first-listed ingredient. Each bears the words “Sugar Free” on the front panel, in a starburst device. Each declares in its Supplement Facts panel that a labeled serving contains no more than half a gram of Total Sugars. And each states elsewhere on the same package a net-carbohydrate equation that subtracts a stated quantity of allulose from the Product’s total carbohydrate. The Products differ in flavor, in co-branding, in pack count and in the quantity of allulose each contains. They do not differ in the representation Plaintiffs challenge.

37. The quantity of allulose in a labeled serving, and the manner in which each Product declares its sugars content, are as follows, in each case as stated by Defendants on the Product’s own label:

a. the Original Product: serving size one 20-gram pack; 8 grams of allulose; “Total Sugars < 0.5 g”; “Includes 0 g Added Sugars” (Ex. 2);

b. the Firecracker Product: serving size one 20-gram pack; 8 grams of allulose; “Total Sugars < 0.5 g”; “Includes 0 g Added Sugars” (Ex. 1);

c. the Mango Product: serving size one 20-gram pack; 8 grams of allulose; “Total Sugars < 0.5 g”; “Includes 0 g Added Sugars” (Ex. 9);

d. the Minions Product: serving size one 20-gram pack; 8 grams of allulose; “Total Sugars < 0.5 g”; “Includes 0 g Added Sugars” (Ex. 17);

e. the Raspberry Lemonade Product: serving size one 20-gram pack; 8 grams of allulose; “Total Sugars < 0.5 g”; “Includes 0 g Added Sugars” (Ex. 23);

f. the Kids Product: serving size one 15-gram pack; 6 grams of allulose; “Total Sugars < 0.5 g”; “Includes 0 g Added Sugars” (Ex. 10);

g. the Kids Minions Product: serving size one 15-gram pack; 6 grams of allulose; “Total Sugars < 0.5 g”; “Includes 0 g Added Sugars” (Ex. 19);

h. the Kids Firecracker Product: serving size one 15-gram pack; 6 grams of allulose; “Total Sugars < 0.5 g”; “Includes 0 g Added Sugars” (Ex. 21);

i. the Kids Raspberry Lemonade Product: serving size one 15-gram pack; 6 grams of allulose; “Total Sugars < 0.5 g”; “Includes 0 g Added Sugars” (Ex. 25);

j. the immün Products: serving size one 20-gram pack; 7 grams of allulose; “Total Sugars 0 g”; no declaration of added sugars appears on the panel (Ex. 11); and

k. the nütrops Product: serving size one 20-gram pack; 9 grams of allulose; “Total Sugars 0 g”; no declaration of added sugars appears on the panel (Ex. 12).

38. Every Product therefore contains, in a single labeled serving, at least twelve times the half-gram of sugars that federal regulation permits in a food labeled “Sugar Free.” Defendants sell every Product alongside a cane-sugar version of the same gummy, which declares cane sugar in the identical first ingredient position and is not labeled “Sugar Free.”

39. The Products are dietary supplements within the meaning of 21 U.S.C. § 321(ff). Their labels bear the statement of identity “Dietary Supplement” and a Supplement Facts panel (Exs. 1, 2, 9, 10, 11, 12, 17, 19, 21, 23, 25).

40. The Products are sold in daily packs. Defendants’ cane-sugar “Low Sugar” version of the same gummy is sold alongside them.

41. Defendants present the Products to consumers as one half of a binary choice. For each of the eleven product lines Defendants offer the identical gummy in two versions, which it labels “Low Sugar” and “Sugar Free.” The “Low Sugar” version is sweetened with cane sugar. The “Sugar Free” version is sweetened with allulose, in or about the same amount, as set out at

Paragraph 58 below. The substitution is apparent on the face of the two labels. On every pair, allulose is the first-listed ingredient of the Sugar Free version and cane sugar is the first-listed ingredient of the Low Sugar version, in the identical position, and the ingredients that follow are the same but for the differences described at Paragraphs 59 and 61 below. On every pair the declared Total Carbohydrate and Dietary Fiber are identical as between the two versions; only the sugars entries and, on every pair but one, Net Carbohydrate and calorie count differ. A consumer choosing between them is choosing on the basis of understood sugar content (based on Defendants' representation), Net Carbohydrates, and nothing else.

42. Defendants have labeled the Products "Sugar Free" at all times relevant to this action and continue to do so.

**C. C. The Label.**

43. The allegations in this subsection are drawn from the packaging of the Products: the printer's production artwork, or dieline, for the Firecracker Product, and Defendants' own published package artwork for each of the other Products. Exs. 1, 2, 9–12, 17, 19, 21, 23, 25.

44. **The front panel**. Every Product bears the words "Sugar Free" on its front panel, in a starburst device. The Original Product's front panel also bears the words "#1 Greens Brand," "COMPREHENSIVE NUTRITION," "Superfoods Greens Gummies," and "Fresh & Sweet Taste"; the Firecracker Product's front panel bears "COMPREHENSIVE NUTRITION," "Superfoods Greens Gummies," and "Cherry, Lemon Lime & Blue Raspberry"; the Mango Product's front panel bears "COMPREHENSIVE NUTRITION," "Superfoods Greens Gummies," and "Sweet & Juicy Mango"; the Minions Product's front panel bears "COMPREHENSIVE NUTRITION," "Superfoods Greens Gummies," "Bello Banana Berry," and "ILLUMINATION'S MINIONS"; the Raspberry Lemonade Product's front panel bears "COMPREHENSIVE NUTRITION," "Superfoods Greens Gummies," and "Raspberry Lemonade"; the Kids Product's

front panel bears "COMPREHENSIVE NUTRITION FOR KIDS," "Superfoods Greens Gummies," and "Strawberry Burst"; the Kids Minions Product's front panel bears "COMPREHENSIVE NUTRITION FOR KIDS," "Superfoods Greens Gummies," "Bello Banana Berry," "ILLUMINATION'S MINIONS," and "For ages 2 to 13"; the Kids Firecracker Product's front panel bears "Popsicle® FIRECRACKER," "COMPREHENSIVE NUTRITION FOR KIDS," "Superfoods Greens Gummies," "Cherry, Lemon Lime & Blue Raspberry," and "For ages 2 to 13"; the Kids Raspberry Lemonade Product's front panel bears "COMPREHENSIVE NUTRITION FOR KIDS," "Superfoods Greens Gummies," "Raspberry Lemonade," and "For ages 2 to 13"; the immün Products' front panel bears "DAILY DEFENSE" and "13-in-1 Immunity Gummies"; and the nütrops Product's front panel bears "COMPREHENSIVE BRAIN NUTRITION*" and "Functional Nootropics Gummies."







Original Product package, front panel (Ex. 2); Firecracker Product package, front panel (Ex. 1).




*Mango Product package, front panel (Ex. 9).*




Minions Product package, front panel (Ex. 17).




Raspberry Lemonade Product package, front panel (Ex. 23).




Kids Product package, front panel (Ex. 10).




Kids Minions Product package, front panel (Ex. 19).




Kids Firecracker Product package, front panel (Ex. 21).




Kids Raspberry Lemonade Product package, front panel (Ex. 25).




immün Product package, front panel (Ex. 11).




nütrops Product package, front panel (Ex. 12).

45. **The net-carbohydrate callout**. On every Product, a panel other than the panel bearing the Supplement Facts bears, inside a rounded outline, a headline stating the Product's net carbohydrates. Directly beneath that headline Defendants print an equation that subtracts a stated quantity of allulose from the Product's total carbohydrates. As printed, those equations read:

a. Original Product: "ONLY 1 g OF NET CARBS"; "1 g Net Carbs = 15 g Total Carbs − 6 g Dietary Fiber − 8 g Allulose";

b. Firecracker Product: “ONLY 1 g OF NET CARBS”; “1 g Net Carbs = 15 g Total Carbs − 6 g Dietary Fiber − 8 g Allulose”;

c. Mango Product: "ONLY 1g OF NET CARBS”; “15g Net Carbs − 6g Dietary Fiber − 8g Allulose = 1g Net Carbs”;

d. Minions Product: “ONLY 1 g OF NET CARBS”; “1 g Net Carbs = 15 g Total Carbs − 6 g Dietary Fiber − 8 g Allulose”;

e. Raspberry Lemonade Product: “ONLY 1 g OF NET CARBS”; “1 g Net Carbs = 15 g Total Carbs − 6 g Dietary Fiber − 8 g Allulose”;

f. Kids Product: “ONLY 2 g OF NET CARBS”; “2 g Net Carbs = 12 g Total Carbs − 4 g Dietary Fiber − 6 g Allulose”;

g. Kids Minions Product: “Only 2g of Net Carbs”; “2g = 12g − 4g − 6g Allulose”;

h. Kids Firecracker Product: “ONLY 2 g OF NET CARBS”; “2 g Net Carbs = 12 g Total Carbs − 4 g Dietary Fiber − 6 g Allulose”;

i. Kids Raspberry Lemonade Product: “Only 2g of Net Carbs”; “2g = 12g − 4g − 6g Allulose”;

j. immün Products: "ONLY 1 g OF NET CARBS"; "1 g Net Carbs = 15 g Total Carbs − 7 g Dietary Fiber − 7 g Allulose"; and

k. nütrops Product: “ONLY 1 g OF NET CARBS”; “1 g Net Carbs = 16 g Total Carbs − 6 g Dietary Fiber − 9 g Allulose.”

46. Defendants therefore state on every Product’s package, in its own arithmetic and in its own words, the quantity of allulose that a labeled serving of that Product contains.

47. **The Supplement Facts panel**. Each Product states above the Supplement Facts panel: “Suggested Use: Take no more than one pack per day.” Each Supplement Facts panel

declares a pack contains (i) 20 grams on the Original, Firecracker, Mango, Minions, Raspberry Lemonade, immün and nütrops Products; and (ii) 15 grams on the Kids, Kids Minions, Kids Firecracker and Kids Raspberry Lemonade Products.

48. Nine of the Products declare their sugars content as a figure below the reporting threshold. The Original, Firecracker, Mango, Minions and Raspberry Lemonade Products each declare "Calories 20"; "Total Carbohydrate 15 g 5%**"; "Dietary Fiber 6 g 21%**"; "Total Sugars < 0.5 g †"; and "Includes 0 g Added Sugars." The Kids, Kids Minions and Kids Raspberry Lemonade Products each declare "Calories 15"; "Total Carbohydrate 12 g"; "Dietary Fiber 4 g"; "Total Sugars < 0.5 g †"; and "Includes 0 g Added Sugars." The Kids Firecracker Product declares the same figures but for its calorie count, which it declares as "Calories 40." Each of the four Kids Products carries two columns of Daily Values, one headed "% DV children 2-3 years" and the other "% DV children ≥4 years."




Original Product package, back panel (Ex. 2).




Firecracker Product package (Ex. 1).




Mango Product package, back panel (Ex. 9).




Minions Product package, back panel (Ex. 17).




Raspberry Lemonade Product package, back panel (Ex. 23).



ONLY 2 g OF NET CARBS

2 g Net Carbs = 12 g Total Carbs − 4 g Dietary Fiber − 6 g Allulose

KIDS grüns™

# Supplement Facts

Serving Size: One Pack (15 g)
Servings Per Container: 28

| Amount Per Serving | | % DV children 2-3 years | % DV children ≥4 years |
|---|---|---|---|
| Calories | 15 | | |
| Total Carbohydrate | 12 g | 8%** | 4%*** |
| Dietary Fiber | 4 g | 29%** | 14%*** |
| Total Sugars | < 0.5 g | † | † |
| Includes 0 g Added Sugars | | | |
| Vitamin A (as retinyl palmitate) | 445 mcg RAE | 149% | 50% |
| Vitamin C (as ascorbic acid) | 46 mg | 307% | 51% |
| Vitamin D ($D_3$) (as cholecalciferol) | 9.9 mcg | 66% | 50% |
| Vitamin E (as d-alpha-tocopherol) | 7.4 mg | 124% | 50% |
| Thiamin (as thiamin hydrochloride) | 0.59 mg | 119% | 50% |
| Riboflavin (Vitamin $B_2$) | 0.64 mg | 129% | 50% |
| Niacin (as niacinamide) | 7.9 mg | 132% | 50% |
| Vitamin $B_6$ (as pyridoxal-5-phosphate) | 0.8 mg | 168% | 50% |
| Vitamin $K_2$ (as menaquinone-7) | 59.4 mcg | † | † |

| Amount Per Serving | | % DV children 2-3 years | % DV children ≥4 years |
|---|---|---|---|
| Folate (as L-5-methyltetrahydrofolate) | 200 mcg DFE | 132% | 50% |
| Vitamin $B_{12}$ (as methylcobalamin) | 1.2 mcg | 132% | 50% |
| Biotin | 14.9 mcg | 186% | 50% |
| Pantothenic Acid (as calcium d-pantothenate) | 2.5 mg | 124% | 50% |
| Iron (as ferrous fumarate) | 2.23 mg | 32% | 12% |
| Iodine (as potassium iodide) | 18.81 mcg | 21% | 13% |
| Zinc (as zinc citrate) | 1.36 mg | 45% | 12% |
| Selenium (as sodium selenite) | 6.93 mcg | 35% | 13% |
| Copper (as copper citrate) | 0.11 mg | 37% | 12% |
| Manganese (as manganese gluconate) | 0.28 mg | 24% | 12% |
| Chromium (as chromium chloride) | 4.45 mcg | 41% | 13% |
| Molybdenum (as sodium molybdate) | 5.5 mcg | 32% | 12% |
| Core Nutrients Blend | 6.3 g | † | † |

**Core Nutrients Blend:** Tapioca Fiber (FiberSMART®), Organic Inulin Root Powder, Organic Shiitake Mushroom Extract (Fruiting Body), Organic Kale Leaf & Stalk Powder, Organic Strawberry Fruit Powder, Organic Blueberry Fruit Powder, Organic Raspberry Fruit Powder, Organic Acai (*Euterpe oleracea*) Fruit Powder, Organic Acerola Cherry (*Malpighia glabra*) Fruit Powder, Organic Amla (*Phyllanthus emblica*) Fruit Powder, Organic Cranberry Fruit Powder, Organic Goji Fruit Powder, Organic Maqui (*Aristotelia chilensis*) Fruit Powder, Organic Alfalfa Powder (Aerial Parts), Organic Parsley Leaf Powder, Organic Spinach Leaf & Stalk Powder, Organic Broccoli Floret & Stalk Powder, Organic Green Cabbage Leaf Powder, Organic Tomato Fruit Powder, Organic Spirulina Powder, Organic Astragalus (*Astragalus membranaceus*) Root Extract Powder (10:1), Organic Wheatgrass Leaf Powder, Organic Chlorella Powder, Organic Carrot Root Powder, Organic Oat Grass Powder (Aerial Parts), Organic Barley Grass Leaf Powder (Gluten Free), Organic Beet Root Powder, Organic Lemon Juice Powder, Organic Apple Fruit Powder, Organic Mangosteen (*Garcinia mangostana*) Fruit Powder, Organic Pomegranate Fruit Powder.

*** Percent Daily Values (DV) are based on a 2,000 calorie diet.
** Percent Daily Values (DV) are based on a 1,000 calorie diet.
† Daily Value (DV) not established.

**Other Ingredients:** Allulose, Water, Pectin, Natural Strawberry Flavor, Citric Acid, Vegetable Juice, Sodium Citrate, Reb M (OnoSweet™).

**60+ INGREDIENTS**

*Whole Food Vegetables*
*Whole Food Fruits*
*Vitamins & Minerals*
*Adaptogens**
*Antioxidants*
*Super Mushrooms*
*Gut Health Prebiotics**

**CLEAN INGREDIENTS**

*Vegan*
*Gluten Free*
*Nut Free*
*Dairy Free*
*No Artificial Colors*
*No Artificial Flavors*

WARNING: Accidental overdose of iron-containing products is a leading cause of fatal poisoning in children under 6. Keep this product out of reach of children. In case of accidental overdose, call a doctor or poison control center immediately.

CAUTION: CHILDREN, PREGNANT OR NURSING WOMEN should seek professional medical advice before taking this or any other dietary supplement.

Store in a cool, dry place after opening.

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.

CALIFORNIA WARNING: Risk of cancer and reproductive harm from exposure to lead. See www.P65Warnings.ca.gov/food.

Kids Product package, back panel (Ex. 10).

**Core Nutrients Blend:** Tapioca Fiber (FiberSMART®), Organic Inulin Root Powder, Organic Shiitake Mushroom Extract (Fruiting Body), Organic Kale Leaf & Stalk Powder, Organic Strawberry Fruit Powder, Organic Blueberry Fruit Powder, Organic Raspberry Fruit Powder, Organic Acai (Euterpe oleracea) Fruit Powder, Organic Acerola Cherry (Malpighia glabra) Fruit Powder, Organic Amla (Phyllanthus emblica) Fruit Powder, Organic Cranberry Fruit Powder, Organic Goji Fruit Powder, Organic Maqui (Aristotelia chilensis) Fruit Powder, Organic Alfalfa Powder (Aerial Parts), Organic Parsley Leaf Powder, Organic Spinach Leaf & Stalk Powder, Organic Broccoli Floret & Stalk Powder, Organic Green Cabbage Leaf Powder, Organic Tomato Fruit Powder, Organic Spirulina Powder, Organic Astragalus (Astragalus membranaceus) Root Extract Powder (10:1), Organic Wheatgrass Leaf Powder, Organic Chlorella Powder, Organic Carrot Root Powder, Organic Oat Grass Powder (Aerial Parts), Organic Barley Grass Leaf Powder (Gluten Free), Organic Beet Root Powder, Organic Lemon Juice Powder, Organic Apple Fruit Powder, Organic Mangosteen (Garcinia mangostana) Fruit Powder, Organic Pomegranate Fruit Powder.

**Other Ingredients:** Allulose, Water, Pectin, Natural Flavors, Citric Acid, Fruit and/or Vegetable Juice (Color), Sodium Citrate, Reb M (OnoSweet™).

**WARNING:** Accidental overdose of iron-containing products is a leading cause of fatal poisoning in children under 6. Keep this product out of reach of children. In case of accidental overdose, call a doctor or poison control center immediately.

**CAUTION:** CHILDREN, PREGNANT OR NURSING WOMEN should seek professional medical advice before taking this or any other dietary supplement.

Store in a cool, dry place after opening.

*These statements have not been evaluated by the Food and Drug Administration. This product is not

Kids Minions Product, Supplement Facts as published at Grüns.co (Ex. 19).



ONLY 2 g OF NET CARBS

2 g Net Carbs = 12 g Total Carbs - 4 g Dietary Fiber - 6 g Allulose

Popsicle © 2026 TMICC

Kids grüns ™

**Suggested Use:** Take no more than one pack per day.

# Supplement Facts

Serving Size: One Pack (15 g)
Servings Per Container: 28

| Amount Per Serving | | % DV children 2-3 years | % DV children ≥4 years |
|---|---|---|---|
| Calories | 40 | | |
| Total Carbohydrate | 12 g | 8%** | 4%*** |
| Dietary Fiber | 4 g | 29%** | 14%*** |
| Total Sugars | < 0.5 g | † | † |
| Includes 0 g Added Sugars | | | |
| Vitamin A (as retinyl palmitate) | 445 mcg RAE | 149% | 50% |
| Vitamin C (as ascorbic acid) | 46 mg | 307% | 51% |
| Vitamin D ($D_3$) (as cholecalciferol) | 9.9 mcg | 66% | 50% |
| Vitamin E (as d-alpha-tocopherol) | 7.4 mg | 124% | 50% |
| Thiamin (as thiamin hydrochloride) | 0.59 mg | 119% | 50% |
| Riboflavin (Vitamin $B_2$) | 0.64 mg | 129% | 50% |
| Niacin (as niacinamide) | 7.9 mg | 132% | 50% |
| Vitamin $B_6$ (as pyridoxal-5-phosphate) | 0.8 mg | 168% | 50% |
| Vitamin $K_2$ (as menaquinone-7) | 59.4 mcg | † | † |

| Amount Per Serving | | % DV children 2-3 years | % DV children ≥4 years |
|---|---|---|---|
| Folate (as L-5-methyltetrahydrofolate) | 200 mcg DFE | 132% | 50% |
| Vitamin $B_{12}$ (as methylcobalamin) | 1.2 mcg | 132% | 50% |
| Biotin | 14.9 mcg | 186% | 50% |
| Pantothenic Acid (as calcium d-pantothenate) | 2.5 mg | 124% | 50% |
| Iron (as ferrous fumarate) | 2.23 mg | 32% | 12% |
| Iodine (as potassium iodide) | 18.81 mcg | 21% | 13% |
| Zinc (as zinc citrate) | 1.36 mg | 45% | 12% |
| Selenium (as sodium selenite) | 6.93 mcg | 35% | 13% |
| Copper (as copper citrate) | 0.11 mg | 37% | 12% |
| Manganese (as manganese gluconate) | 0.28 mg | 24% | 12% |
| Chromium (as chromium chloride) | 4.45 mcg | 41% | 13% |
| Molybdenum (as sodium molybdate) | 5.5 mcg | 32% | 12% |
| Core Nutrients Blend | 6.3 g | † | † |

**Core Nutrients Blend:** Tapioca Fiber (FiberSMART®), Organic Inulin Root Powder, Organic Shiitake Mushroom Extract (Fruiting Body), Organic Kale Leaf & Stalk Powder, Organic Strawberry Fruit Powder, Organic Blueberry Fruit Powder, Organic Raspberry Fruit Powder, Organic Acai (*Euterpe oleracea*) Fruit Powder, Organic Acerola Cherry (*Malpighia glabra*) Fruit Powder, Organic Amla (*Phyllanthus emblica*) Fruit Powder, Organic Cranberry Fruit Powder, Organic Goji Fruit Powder, Organic Maqui (*Aristotelia chilensis*) Fruit Powder, Organic Alfalfa Powder (Aerial Parts), Organic Parsley Leaf Powder, Organic Spinach Leaf & Stalk Powder, Organic Broccoli Floret & Stalk Powder, Organic Green Cabbage Leaf Powder, Organic Tomato Fruit Powder, Organic Spirulina Powder, Organic Astragalus (*Astragalus membranaceus*) Root Extract Powder (10:1), Organic Wheatgrass Leaf Powder, Organic Chlorella Powder, Organic Carrot Root Powder, Organic Oat Grass Powder (Aerial Parts), Organic Barley Grass Leaf Powder (Gluten Free), Organic Beet Root Powder, Organic Lemon Juice Powder, Organic Apple Fruit Powder, Organic Mangosteen (*Garcinia mangostana*) Fruit Powder, Organic Pomegranate Fruit Powder.

*** Percent Daily Values (DV) are based on a 2,000 calorie diet.
** Percent Daily Values (DV) are based on a 1,000 calorie diet.
† Daily Value (DV) not established.

**Other Ingredients:** Allulose, Water, Pectin, Citric Acid, Natural Cherry Flavor, Natural Lemon Lime Flavor, Natural Flavors, Vegetable Juice (Color), Natural Blue Raspberry Flavor, Reb M (OnoSweet™).

**60+ INGREDIENTS**
*Whole Food Vegetables*
*Whole Food Fruits*
*Vitamins & Minerals*
*Adaptogens**
*Antioxidants*
*Super Mushrooms*
*Gut Health Prebiotics**

**CLEAN INGREDIENTS**
*Vegan*
*Gluten Free*
*Nut Free*
*Dairy Free*
*No Artificial Colors*
*No Artificial Flavors*

WARNING: Accidental overdose of iron-containing products is a leading cause of fatal poisoning in children under 6. Keep this product out of reach of children. In case of accidental overdose, call a doctor or poison control center immediately.

CAUTION: CHILDREN, PREGNANT OR NURSING WOMEN should seek professional medical advice before taking this or any other dietary supplement.

Store in a cool, dry place after opening.

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.

CALIFORNIA WARNING: Risk of cancer and reproductive harm from exposure to lead. See www.P65Warnings.ca.gov/food.

Kids Firecracker Product package, back panel (Ex. 21).

SUGAR-FREE

# Grüns Kids Raspberry Lemonade

**Serving Size:** One Pack (15 g)
**Servings Per Container:** 28
**Suggested Use:** Take no more than one pack per day.

## Only 2g of Net Carbs

**2g** = **12g** - **4g** - **6g**

Net Carbs, Total Carbs, Dietary Fiber, Allulose

## 60+ Ingredients

Whole Food Vegetables | Whole Food Fruits | Vitamins & Minearals | Antioxidants | Adaptogens* | Super Mushrooms | Gut Health Prebiotics*

## Clean Ingredients

Vegan | Gluten Free | Nut Free | Dairy Free | No Artificial Colors | No Artificial Flavors

## Supplement Facts

| Amount Per Serving | | %DV children 2-3 years | %DV children ≥ 4 years |
|---|---|---|---|
| Calories | 15 | | |
| Total Carbohydrate | 12 g | 8%** | 4%*** |
| Dietary Fiber | 4 g | 29%** | 14%*** |

Kids Raspberry Lemonade Product, Supplement Facts as published at Grüns.co (Ex. 25).

49. The remaining three Products — the two immün Products and the nütrops Product — declare their sugars content as zero, and declare no added sugars at all. The immün Products each declare “Calories 25”; “Total Carbohydrate 15 g 5%**”; “Dietary Fiber 7 g 25%**”; and “Total Sugars 0 g †.” The nütrops Product declares “Calories 20”; “Total Carbohydrate 16 g 6%**”; “Dietary Fiber 6 g 21%**”; and “Total Sugars 0 g †.” Neither panel carries an “Includes . . . Added Sugars” line.




immün Product package, back panel (Ex. 11).




nütrops Product package, back panel (Ex. 12).

50. Every Product's package therefore makes two statements about the same labeled serving that cannot both be true if allulose is a sugar. On one panel it states that the serving contains between 6 and 9 grams of allulose. On the Supplement Facts panel it declares that the serving contains no more than half a gram of Total Sugars, and, on the immün and nütrops Products, that it contains none.

51. **The ingredient declaration**. Allulose is the first-listed "Other Ingredient" on every Product. The declarations read:

a. Original Product: "Other Ingredients: Allulose, Water, Pectin, Natural Strawberry Flavor, Citric Acid, Vegetable Juice, Sodium Citrate, Reb M (OnoSweet™).";

b. Firecracker Product: “Other Ingredients: Allulose, Water, Pectin, Citric Acid, Natural Cherry Flavor, Natural Lemon Lime Flavor, Natural Flavors, Vegetable Juice (Color), Natural Blue Raspberry Flavor, Reb M (OnoSweet™).”;

c. Mango Product: “Other Ingredients: Allulose, Water, Pectin, Natural Flavors, Citric Acid, Turmeric (color), Spirulina Extract (color), Sodium Citrate, Reb M (OnoSweet™).”;

d. Minions Product: “Other Ingredients: Allulose, Water, Pectin, Natural Flavors, Citric Acid, Fruit and/or Vegetable Juice (color), Sodium Citrate, Reb M (OnoSweet™).”;

e. Raspberry Lemonade Product: "Other Ingredients: Allulose, Water, Pectin, Natural Flavors, Citric Acid, Fruit and/or Vegetable Juice (color), Sodium Citrate, Reb M (OnoSweet™).";

f. Kids Product: "Other Ingredients: Allulose, Water, Pectin, Natural Strawberry Flavor, Citric Acid, Vegetable Juice, Sodium Citrate, Reb M (OnoSweet™).";

g. Kids Minions Product: "Other Ingredients: Allulose, Water, Pectin, Natural Flavors, Citric Acid, Fruit and/or Vegetable Juice (Color), Sodium Citrate, Reb M (OnoSweet™).";

h. Kids Firecracker Product: "Other Ingredients: Allulose, Water, Pectin, Citric Acid, Natural Cherry Flavor, Natural Lemon Lime Flavor, Natural Flavors, Vegetable Juice (Color), Natural Blue Raspberry Flavor, Reb M (OnoSweet™).";

i. Kids Raspberry Lemonade Product: "Other Ingredients: Allulose, Water, Pectin, Natural Flavors, Citric Acid, Fruit and/or Vegetable Juice (Color), Sodium Citrate, Reb M (OnoSweet™).";

j. immün Products: "Other Ingredients: Allulose, Water, Pectin, Citric Acid, Natural Pineapple Flavor, Reb M (OnoSweet™)."; and

k. nütrops Product: "Other Ingredients: Allulose, Water, Pectin, Natural Flavors, Natural Lemon Flavor, Citric Acid, Reb M (Onosweet™)."

52. Ingredients are declared "in descending order of predominance by weight." 21 C.F.R. § 101.4(a)(1) (2026). Allulose is therefore the predominant ingredient other than the "Core Nutrients Blend" or its equivalent in each Product.

53. **What the label does not say**. Nothing on any Product's package discloses that allulose is a sugar. Nothing on any package discloses that allulose falls within the definition of total sugars in 21 C.F.R. § 101.9(c)(6)(ii) (2026). Nothing on any package qualifies the "Sugar Free" claim in any way.

54. On no Product is the ingredient declaration followed by an asterisk referring to any of the three statements prescribed by 21 C.F.R. § 101.60(c)(1)(ii) (2026) — "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar."

**D. D. The Cane-Sugar Version of the Same Product Proves the Substitution.**

55. Defendants sell the identical gummy in a cane-sugar formulation, which it markets as "Low Sugar." For each of the eleven product lines Defendants offer both versions, and comparison of the two labels establishes what the substitution was: Defendants removed the cane sugar, put allulose in its place in or about the same amount, and labeled the result "Sugar Free."

56. The two versions of each product line declare the following, in each case as printed on Defendants' own package artwork:

a. Original Product. The Low Sugar version declares a serving size of one 20-gram pack, "Calories 50," "Total Carbohydrate 15 g," "Dietary Fiber 6 g," "Total Sugars 8g" and "Includes 8g Added Sugars 16%**." The Sugar Free version declares the

same serving size, the same 15 grams of Total Carbohydrate and the same 6 grams of Dietary Fiber, but "Calories 20," "Total Sugars < 0.5 g" and "Includes 0 g Added Sugars," and identifies 8 grams of allulose;

b. Firecracker Product. The Low Sugar version declares a serving size of one 20-gram pack, "Calories 50," "Total Carbohydrate 15 g 5%**," "Dietary Fiber 6 g 21%**," "Total Sugars 8 g," and "Includes 8 g Added Sugars 16%**." The Sugar Free version declares the same serving size, the same 15 grams of Total Carbohydrate and the same 6 grams of Dietary Fiber, but "Calories 20," "Total Sugars < 0.5 g," and "Includes 0 g Added Sugars.";

c. Mango Product. The Low Sugar version declares a serving size of one 20-gram pack, "Calories 50," "Total Carbohydrate 15 g 5%**," "Dietary Fiber 6 g 21%**," "Total Sugars 8 g" and "Includes 8 g Added Sugars 16%**." The Sugar Free version declares the same serving size, the same 15 grams of Total Carbohydrate and the same 6 grams of Dietary Fiber, but "Calories 20," "Total Sugars < 0.5 g" and "Includes 0 g Added Sugars," and identifies 8 grams of allulose;

d. Minions Product. The Low Sugar version declares a serving size of one 20-gram pack, "Calories 50," "Total Carbohydrate 15 g 5%**," "Dietary Fiber 6 g 21%**," "Total Sugars 8 g," and "Includes 8 g Added Sugars 16%**." The Sugar Free version declares the same serving size, the same 15 grams of Total Carbohydrate and the same 6 grams of Dietary Fiber, but "Calories 20," "Total Sugars < 0.5 g" and "Includes 0 g Added Sugars," and identifies 8 grams of allulose;

e. Raspberry Lemonade Product. The Low Sugar version declares a serving size of one 20-gram pack, "Calories 50," "Total Carbohydrate 15 g 5%**," "Dietary Fiber

6 g 21%**," "Total Sugars 8 g" and "Includes 8 g Added Sugars 16%**." The Sugar Free version declares the same serving size, the same 15 grams of Total Carbohydrate and the same 6 grams of Dietary Fiber, but "Calories 20," "Total Sugars < 0.5 g" and "Includes 0 g Added Sugars," and identifies 8 grams of allulose;

f. Kids Product. The Low Sugar version declares a serving size of one 15-gram pack, "Calories 40," "Total Carbohydrate 12 g," "Dietary Fiber 4 g," "Total Sugars 7 g" and "Includes 7 g Added Sugars." The Sugar Free version declares the same serving size, the same 12 grams of Total Carbohydrate and the same 4 grams of Dietary Fiber, but "Calories 15," "Total Sugars < 0.5 g" and "Includes 0 g Added Sugars," and identifies 6 grams of allulose;

g. Kids Minions Product. The Low Sugar version declares a serving size of one 15-gram pack, "Calories 40," "Total Carbohydrate 12 g," "Dietary Fiber 4 g," "Total Sugars 7 g" and "Includes 7 g Added Sugars." The Sugar Free version declares the same serving size, the same 12 grams of Total Carbohydrate and the same 4 grams of Dietary Fiber, but "Calories 15," "Total Sugars < 0.5 g" and "Includes 0 g Added Sugars," and identifies 6 grams of allulose;

h. Kids Firecracker Product. The Low Sugar version declares a serving size of one 15-gram pack, "Calories 40," "Total Carbohydrate 12 g," "Dietary Fiber 4 g," "Total Sugars 7 g" and "Includes 7 g Added Sugars." The Sugar Free version declares the same serving size, the same 12 grams of Total Carbohydrate, the same 4 grams of Dietary Fiber and, alone among the Products, the same "Calories 40," but "Total Sugars < 0.5 g" and "Includes 0 g Added Sugars," and identifies 6 grams of allulose;

i. Kids Raspberry Lemonade Product. The Low Sugar version declares a serving size of one 15-gram pack, “Calories 40,” “Total Carbohydrate 12 g,” “Dietary Fiber 4 g,” “Total Sugars 7 g” and “Includes 7 g Added Sugars.” The Sugar Free version declares the same serving size, the same 12 grams of Total Carbohydrate and the same 4 grams of Dietary Fiber, but “Calories 15,” “Total Sugars < 0.5 g” and “Includes 0 g Added Sugars,” and identifies 6 grams of allulose;

j. immün Products. The Low Sugar version declares a serving size of one 20-gram pack, “Calories 50,” “Total Carbohydrate 15 g 5%**,” "Dietary Fiber 7 g 25%**," "Total Sugars 7 g" and "Includes 7 g Added Sugars 14%." The Sugar Free version declares the same serving size, the same 15 grams of Total Carbohydrate and the same 7 grams of Dietary Fiber, but "Calories 25" and "Total Sugars 0 g," carries no "Includes . . . Added Sugars" line at all, and identifies 7 grams of allulose; and

k. nütrops Product. The Low Sugar version declares a serving size of one 20-gram pack, “Calories 50,” “Total Carbohydrate 16 g 6%**,” “Dietary Fiber 6 g 21%**,” “Total Sugars 9 g” and “Includes 9 g Added Sugars 18%**.” The Sugar Free version declares the same serving size, the same 16 grams of Total Carbohydrate and the same 6 grams of Dietary Fiber, but “Calories 20” and “Total Sugars 0 g,” carries no “Includes . . . Added Sugars” line, and identifies 9 grams of allulose.

The paired panels, as published by Defendants, appear below.

**Supplement Facts**

| Amount Per Serving | | %DV |
|---|---|---|
| Calories | 50 | |
| Total Carbohydrate | 15 | 5%** |
| Dietary Fiber | 6g | 21%** |
| Total Sugars | 8g | † |
| Includes 8g Added Sugars | | 16%** |

Low Sugar Product package (Ex. 3).




Firecracker Low Sugar Product package, back panel (Ex. 27).




Mango Low Sugar Product package, back panel (Ex. 13).




Minions Low Sugar Product package, back panel (Ex. 18).




Raspberry Lemonade Low Sugar Product package, back panel (Ex. 24).

# Grüns Kids

**Serving Size:** One Pack (15 g)
**Servings Per Container:** 28
**Suggested Use:** Take no more than one pack per day.

## Only 8g of Net Carbs

| 8g | = 12g | - 4g |
|---|---|---|
| Net Carbs | Total Carbs | Dietary Fiber |

## 60+ Ingredients

Whole Food Vegetables · Whole Food Fruits · Vitamins & Minerals · Adaptogens* · Antioxidants · Super Mushrooms · Gut Health Prebiotics*

## Clean Ingredients

Vegan · Gluten Free · Nut Free · Dairy Free · No Artificial Colors · No Artificial Flavors

## Supplement Facts

| Amount Per Serving | | %DV children 2-3 years | %DV children ≥ 4 years |
|---|---|---|---|
| Calories | 40 | | |
| Total Carbohydrate | 12 g | 8%** | 4%*** |
| Dietary Fiber | 4 g | 29%** | 14%*** |
| Total Sugars | 7 g | † | † |
| Includes 7 g Added Sugars | | 28%** | 14%*** |
| Vitamin A (as retinyl palmitate) | 445 mcg RAE | 149% | 50% |
| Vitamin C (as ascorbic acid) | 46 mg | 307% | 51% |

Kids Low Sugar Product, Supplement Facts as published at Grüns.co (Ex. 16).




Kids Minions Low Sugar Product package, back panel (Ex. 20).



ONLY 8 g OF NET CARBS

8 g Net Carbs = 12 g Total Carbs - 4 g Dietary Fiber

Popsicle

© 2026 TMICC

Kids grüns

**Suggested Use:** Take no more than one pack per day.

# Supplement Facts

Serving Size: One Pack (15 g)
Servings Per Container: 28

| Amount Per Serving | | % DV children 2-3 years | % DV children ≥4 years |
|---|---|---|---|
| Calories | 40 | | |
| Total Carbohydrate | 12 g | 8%** | 4%*** |
| Dietary Fiber | 4 g | 29%** | 14%*** |
| Total Sugars | 7 g | † | † |
| Includes 7 g Added Sugars | | 28%** | 14%*** |
| Vitamin A (as retinyl palmitate) | 445 mcg RAE | 149% | 50% |
| Vitamin C (as ascorbic acid) | 46 mg | 307% | 51% |
| Vitamin D ($D_3$) (as cholecalciferol) | 9.9 mcg | 66% | 50% |
| Vitamin E (as d-alpha-tocopherol) | 7.4 mg | 124% | 50% |
| Thiamin (as thiamin hydrochloride) | 0.59 mg | 119% | 50% |
| Riboflavin (Vitamin $B_2$) | 0.64 mg | 129% | 50% |
| Niacin (as niacinamide) | 7.9 mg | 132% | 50% |
| Vitamin $B_6$ (as pyridoxal-5-phosphate) | 0.8 mg | 168% | 50% |
| Vitamin $K_2$ (as menaquinone-7) | 59.4 mcg | † | † |

| Amount Per Serving | | % DV children 2-3 years | % DV children ≥4 years |
|---|---|---|---|
| Folate (as L-5-methyltetrahydrofolate) | 200 mcg DFE | 132% | 50% |
| Vitamin $B_{12}$ (as methylcobalamin) | 1.2 mcg | 132% | 50% |
| Biotin | 14.9 mcg | 186% | 50% |
| Pantothenic Acid (as calcium d-pantothenate) | 2.5 mg | 124% | 50% |
| Iron (as ferrous fumarate) | 2.23 mg | 32% | 12% |
| Iodine (as potassium iodide) | 18.81 mcg | 21% | 13% |
| Zinc (as zinc citrate) | 1.36 mg | 45% | 12% |
| Selenium (as sodium selenite) | 6.93 mcg | 35% | 13% |
| Copper (as copper citrate) | 0.11 mg | 37% | 12% |
| Manganese (as manganese gluconate) | 0.28 mg | 24% | 12% |
| Chromium (as chromium chloride) | 4.45 mcg | 41% | 13% |
| Molybdenum (as sodium molybdate) | 5.5 mcg | 32% | 12% |
| Core Nutrients Blend | 6.3 g | † | † |

**Core Nutrients Blend:** Tapioca Fiber (FiberSMART®), Organic Inulin Root Powder, Organic Shiitake Mushroom Extract (Fruiting Body), Organic Kale Leaf & Stalk Powder, Organic Strawberry Fruit Powder, Organic Blueberry Fruit Powder, Organic Raspberry Fruit Powder, Organic Acai (*Euterpe oleracea*) Fruit Powder, Organic Acerola Cherry (*Malpighia glabra*) Fruit Powder, Organic Amla (*Phyllanthus emblica*) Fruit Powder, Organic Cranberry Fruit Powder, Organic Goji Fruit Powder, Organic Maqui (*Aristotelia chilensis*) Fruit Powder, Organic Alfalfa Powder (Aerial Parts), Organic Parsley Leaf Powder, Organic Spinach Leaf & Stalk Powder, Organic Broccoli Floret & Stalk Powder, Organic Green Cabbage Leaf Powder, Organic Tomato Fruit Powder, Organic Spirulina Powder, Organic Astragalus (*Astragalus membranaceus*) Root Extract Powder (10:1), Organic Wheatgrass Leaf Powder, Organic Chlorella Powder, Organic Carrot Root Powder, Organic Oat Grass Powder (Aerial Parts), Organic Barley Grass Leaf Powder (Gluten Free), Organic Beet Root Powder, Organic Lemon Juice Powder, Organic Apple Fruit Powder, Organic Mangosteen (*Garcinia mangostana*) Fruit Powder, Organic Pomegranate Fruit Powder.

*** Percent Daily Values (DV) are based on a 2,000 calorie diet.
** Percent Daily Values (DV) are based on a 1,000 calorie diet.
† Daily Value (DV) not established.

**Other Ingredients:** Cane Sugar, Water, Pectin, Citric Acid, Natural Cherry Flavor, Natural Lemon Lime Flavor, Natural Flavors, Vegetable Juice (Color), Natural Blue Raspberry Flavor, Sodium Citrate.

**60+ INGREDIENTS**
***Whole Food Vegetables***
***Whole Food Fruits***
***Vitamins & Minerals***
***Adaptogens****
***Antioxidants***
***Super Mushrooms***
***Gut Health Prebiotics****

**CLEAN INGREDIENTS**
***Vegan***
***Gluten Free***
***Nut Free***
***Dairy Free***
***No Artificial Colors***
***No Artificial Flavors***

WARNING: Accidental overdose of iron-containing products is a leading cause of fatal poisoning in children under 6. Keep this product out of reach of children. In case of accidental overdose, call a doctor or poison control center immediately.

CAUTION: CHILDREN, PREGNANT OR NURSING WOMEN should seek professional medical advice before taking this or any other dietary supplement.

Store in a cool, dry place after opening.

*These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.

**CALIFORNIA WARNING:** Risk of cancer and reproductive harm from exposure to lead. See www.P65Warnings.ca.gov/food.

Kids Firecracker Low Sugar Product package, back panel (Ex. 22).

LOW SUGAR

# Grüns Kids Raspberry Lemonade

**Serving Size:** One Pack (15 g)
**Servings Per Container:** 28
**Suggested Use:** Take no more than one pack per day .

## Only 8g of Net Carbs

**8g** = **12g** - **4g**

Net Carbs Total Carbs Dietary Fiber

## 60+ Ingredients

Whole Food Vegetables · Whole Food Fruits · Vitamins & Minerals · Adaptogens* · Antioxidants · Super Mushrooms · Gut Health Prebiotics*

## Clean Ingredients

Vegan · Gluten Free · Nut Free · Dairy Free · No Artificial Colors · No Artificial Flavors

## Supplement Facts

| Amount Per Serving | | %DV children 2-3 years | %DV children ≥ 4 years |
|---|---|---|---|
| Calories | 40 | | |
| Total Carbohydrate | 12 g | 8%** | 4%*** |

Kids Raspberry Lemonade Low Sugar Product, Supplement Facts as published at Grüns.co (Ex. 26).




immün Low Sugar Product package, back panel (Ex. 14).




nütrops Low Sugar Product package, back panel (Ex. 15).

57. Within every pair the declared Total Carbohydrate and the declared Dietary Fiber are identical. The entries that differ are the sugars entries, the net-carbohydrate callout and, on every pair but one, the calorie count. Defendants did not reformulate the carbohydrate content of these products. It changed the sweetener.

58. The quantity (in grams) of allulose in each Sugar Free Product is the same as, or within one gram of, the quantity of cane sugar declared on its Low Sugar counterpart: 8 grams of allulose in place of 8 grams of cane sugar on the Original, Firecracker, Mango, Minions and Raspberry Lemonade Products; 7 grams in place of 7 grams on the immün Products; 9 grams in

place of 9 grams on the nütrops Product; and 6 grams in place of 7 grams on each of the Kids, Kids Minions, Kids Firecracker and Kids Raspberry Lemonade Products.

59. The ingredient declarations are the same but for the sweetener. On each Low Sugar version cane sugar is declared first; on each Sugar Free version allulose is declared first, in the identical position. The Low Sugar declarations read:

a. Original Product: "Other Ingredients: Cane Sugar, Water, Pectin, Natural Strawberry Flavor, Citric Acid, Vegetable Juice, Sodium Citrate.";

b. Firecracker Product: "Other Ingredients: Cane Sugar, Water, Pectin, Citric Acid, Natural Cherry Flavor, Natural Lemon Lime Flavor, Natural Flavors, Vegetable Juice (Color), Natural Blue Raspberry Flavor, Sodium Citrate.";

c. Mango Product: "Other Ingredients: Cane Sugar, Water, Pectin, Natural Flavors, Citric Acid, Turmeric (color), Spirulina Extract (color), Sodium Citrate.";

d. Minions Product: "Other Ingredients: Cane Sugar, Water, Pectin, Natural Flavors, Citric Acid, Fruit and/or Vegetable Juice (color), Sodium Citrate.";

e. Raspberry Lemonade Product: "Other Ingredients: Cane Sugar, Water, Pectin, Natural Flavors, Citric Acid, Fruit and/or Vegetable Juice (color), Sodium Citrate.";

f. Kids Product: "Other Ingredients: Cane Sugar, Water, Pectin, Natural Strawberry Flavor, Citric Acid, Vegetable Juice, Sodium Citrate.";

g. Kids Minions Product: "Other Ingredients: Cane Sugar, Water, Pectin, Natural Flavors, Citric Acid, Fruit and/or Vegetable Juice (color), Sodium Citrate.";

h. Kids Firecracker Product: "Other Ingredients: Cane Sugar, Water, Pectin, Citric Acid, Natural Cherry Flavor, Natural Lemon Lime Flavor, Natural Flavors, Vegetable Juice (Color), Natural Blue Raspberry Flavor, Sodium Citrate.";

i. Kids Raspberry Lemonade Product: "Other Ingredients: Cane Sugar, Water, Pectin, Natural Flavors, Citric Acid, Fruit and/or Vegetable Juice (color), Sodium Citrate.";

j. immün Products: "Other Ingredients: Cane Sugar, Water, Pectin, Natural Pineapple Flavor, Citric Acid."; and

k. nütrops Product: "Other Ingredients: Cane Sugar, Water, Pectin, Natural Flavors, Natural Lemon Flavor, Citric Acid, Sodium Citrate."

**Other Ingredients:** Cane Sugar, Water, Pectin, Natural Strawberry Flavor, Citric Acid, Vegetable Juice, Sodium Citrate.

Low Sugar Product package (Ex. 3).

60. Each Sugar Free declaration adds one further ingredient at the end of the list which the cane-sugar formulation does not carry: Reb M, a high-intensity sweetener Defendants market as OnoSweet™. Reb M is declared last, after the flavors and the acidulants, and therefore contributes less weight to the product than any of the ingredients preceding it. 21 C.F.R. § 101.4(a)(1). Allulose, not Reb M, occupies the first-listed position and supplies the bulk of the sweetening carbohydrate that the cane sugar formerly supplied.

61. The calorie difference follows from the substitution. Federal regulation provides a general factor of 4 calories per gram for total carbohydrate. 21 C.F.R. § 101.9(c)(1)(i)(B). The Food and Drug Administration has stated that "under 21 CFR 101.9(c)(1)(B), a caloric value of 4 kcal/g must currently be used for allulose because it is a carbohydrate," and that it intends "to exercise enforcement discretion for the use of a caloric value of 0.4 kcal/g for allulose." At 4 calories per gram the cane sugar removed from each product contributed roughly 32 calories on the Products containing 8 grams, roughly 28 calories on the immün Products, which contain 7

grams, and roughly 36 calories on the nütrops Product, which contains 9 grams. At the reduced factor the allulose put in its place contributes roughly 3 calories, roughly 3 calories and roughly 4 calories respectively. The declared calorie counts move accordingly: 50 to 20 on the Original, Firecracker, Mango, Minions, and Raspberry Lemonade Products, 50 to 25 on the immün Products, 50 to 20 on the nütrops Product, and 40 to 15 on the Kids, Kids Minions, and Kids Raspberry Lemonade Products. Each of those declared differences corresponds, within the rounding permitted by 21 C.F.R. § 101.9(c)(1), to the replacement of the cane sugar by allulose and to nothing else.[9]

62. The Kids Firecracker Product is the exception, and the exception is Defendants' own doing. It declares the same 15-gram serving, the same 12 grams of Total Carbohydrate, the same 4 grams of Dietary Fiber and the same 6.3-gram Core Nutrients Blend as the Kids, Kids Minions, and Kids Raspberry Lemonade Products, and it makes the same substitution of 6 grams of allulose for the 7 grams of cane sugar declared on its own Low Sugar version. On each of those other three Products Defendants declare the calorie count falling from 40 to 15. On the Kids Firecracker Product Defendants declare "Calories 40" on both versions. Defendants thus declare, on the same package that states the product is "Sugar Free," a calorie count identical to that of the cane-sugar version it replaced.

63. Defendants' own net-carbohydrate arithmetic makes the substitution explicit. On every Low Sugar package the equation has two terms: total carbohydrate less dietary fiber. On every Sugar Free package Defendants run the identical subtraction and then removes the allulose. As printed, the paired equations read:

[9] FDA, The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry 4 (Oct. 2020).

a. Original Product: “Only 9g of Net Carbs”; “9g = 15g − 6g” — against “ONLY 1 g OF NET CARBS”; “1 g Net Carbs = 15 g Total Carbs − 6 g Dietary Fiber − 8 g Allulose”;

b. Firecracker Product: “ONLY 9g OF NET CARBS”; “9 g Net Carbs = 15 g Total Carbs − 6 g Dietary Fiber” — against “ONLY 1 g OF NET CARBS”; “1 g Net Carbs = 15 g Total Carbs − 6 g Dietary Fiber − 8 g Allulose”;

c. Mango Product: “ONLY 9G NET CARBS”; “9g Net Carbs = 15g Total Carbs = 6g Dietary Fiber” [sic] — against "ONLY 1G NET CARB”; “15g Net Carbs − 6g Dietary Fiber − 8g Allulose = 1g Net Carbs” [sic];

d. Minions Product: “ONLY 9 g OF NET CARBS”; “9 g Net Carbs = 15 g Total Carbs − 6 g Dietary Fiber” — against “ONLY 1 g OF NET CARBS”; “1 g Net Carbs = 15 g Total Carbs − 6 g Dietary Fiber − 8 g Allulose”;

e. Raspberry Lemonade Product: “ONLY 9 g OF NET CARBS”; “9 g Net Carbs = 15 g Total Carbs − 6 g Dietary Fiber” — against “ONLY 1 g OF NET CARBS”; “1 g Net Carbs = 15 g Total Carbs − 6 g Dietary Fiber − 8 g Allulose”;

f. Kids Product: “Only 8g of Net Carbs”; “8g = 12g − 4g” — against “ONLY 2 g OF NET CARBS”; “2 g Net Carbs = 12 g Total Carbs − 4 g Dietary Fiber − 6 g Allulose.”;

g. Kids Minions Product: “ONLY 8 g OF NET CARBS”; “8 g Net Carbs = 12 g Total Carbs − 4 g Dietary Fiber” — against “Only 2g of Net Carbs”; “2g = 12g − 4g − 6g Allulose”;

h. Kids Firecracker Product: “ONLY 8 g OF NET CARBS”; “8 g Net Carbs = 12 g Total Carbs − 4 g Dietary Fiber” — against “ONLY 2 g OF NET CARBS”; “2 g Net Carbs = 12 g Total Carbs − 4 g Dietary Fiber − 6 g Allulose”;

i. Kids Raspberry Lemonade Product: “Only 8g of Net Carbs”; “8g = 12g − 4g” — against “Only 2g of Net Carbs”; “2g = 12g − 4g − 6g Allulose”;

j. immün Products: “ONLY 8 g OF NET CARBS”; “8 g Net Carbs = 15 g Total Carbs − 7 g Dietary Fiber” — against “ONLY 1 g OF NET CARBS”; “1 g Net Carbs = 15 g Total Carbs − 7 g Dietary Fiber − 7 g Allulose”; and

k. nütrops Product: “ONLY 10 g OF NET CARBS”; “10 g Net Carbs = 16 g Total Carbs − 6 g Dietary Fiber” — against “ONLY 1 g OF NET CARBS”; “1 g Net Carbs = 16 g Total Carbs − 6 g Dietary Fiber − 9 g Allulose”.







Low Sugar Product package (Ex. 3); Firecracker Product package (Ex. 1).

64. Each pair of equations begins from the same total carbohydrate and subtracts the same dietary fiber. The only difference is that on the Sugar Free version Defendants subtract a further quantity, and identifies that quantity as allulose. The allulose therefore occupies precisely the position in Defendants’ own carbohydrate arithmetic that the cane sugar occupies in the comparator — the position of the sweetener. Defendants subtract it because it is a carbohydrate. It declares that same quantity as less than half a gram, and on two product lines as none at all.

65. Defendants thus knew the quantity of sweetening carbohydrate in each Product, because it printed that quantity on the package. It declared that quantity as sugar on the cane-sugar package and as no sugar on the Sugar Free package.

**E. Allulose Is a Sugar.**

66. Allulose, also called D-psicose, is a monosaccharide. It has the molecular formula $C_6H_{12}O_6$ and is an epimer of D-fructose. The Food and Drug Administration ("FDA") has described it in exactly those terms: "Allulose is a monosaccharide that is an epimer of D-fructose."[10]

67. A monosaccharide is a single-unit sugar. Glucose and fructose are monosaccharides. Sucrose and lactose are disaccharides, each composed of two monosaccharide units. Federal regulation defines the sugars content of a food by chemical structure and not by physiological effect: "Total sugars shall be defined as the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)." 21 C.F.R. § 101.9(c)(6)(ii).

68. The definition reaches all free mono- and disaccharides. The four substances named in the parenthetical are illustrations, not limitations. The regulation does not exclude monosaccharides on the basis of how they are metabolized, how many calories they contribute, or how they affect blood glucose.

69. Allulose is a free monosaccharide. It is therefore within the definition of total sugars in 21 C.F.R. § 101.9(c)(6)(ii).

70. That definition is not peculiar to the FDA. The international nomenclature bodies, the international food standards bodies, the World Health Organization ("WHO") and foreign food regulators all define sugars the same way, by chemical structure, and each of them, on its face, reaches allulose. Only one regulator has adopted an express carve-out, as set out below.

---

[10] FDA, *The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels*: Guidance for Industry 6 (Oct. 2020), https://www.fda.gov/media/123342/download.

71. The International Union of Pure and Applied Chemistry and the International Union of Biochemistry and Molecular Biology list psicose — the substance marketed as allulose — among the parent monosaccharides, in the same table and the same class as fructose. Their recommendations state that "[t]he term 'sugar' is frequently applied to monosaccharides and lower oligosaccharides."[11]

72. The Codex Alimentarius Guidelines on Nutrition Labelling define the term without qualification: "Sugars means all monosaccharides and disaccharides present in food."[12]

73. The WHO defines sugars by the same structural criterion. Its guideline on sugars intake explains that "[t]he term 'sugars' includes intrinsic sugars... sugars from milk (lactose and galactose); and free sugars, which are monosaccharides and disaccharides added to foods...."[13]

74. Canada defines the term by regulation in the same words: "sugars means all monosaccharides and disaccharides." Food and Drug Regulations, C.R.C., c. 870, s. B.01.001(1) (Can.). The definition contains no exception for allulose and no qualification based on absorption, metabolism, or caloric yield.

75. The peer-reviewed scientific literature describes allulose in the same terms. The study on which the FDA and commenters have relied for allulose tolerance opens by stating that "D-allulose is a monosaccharide that is low in calories," and lists among its keywords "allulose;

---

[11] Joint Comm'n on Biochemical Nomenclature, Nomenclature of Carbohydrates (Recommendations 1996), 68 Pure & Applied Chem. 1919 (1996) (rule 2-Carb-1.1; app. (a)).
[12] Codex Alimentarius Comm'n, Guidelines on Nutrition Labelling, CXG 2-1985, § 2 (rev. 2021, amended 2024).
[13] World Health Org., Guideline: Sugars Intake for Adults and Children 7 (2015).

monosaccharide; sugar substitute; rare sugar."[14] The same article describes allulose as "a C-3 epimer of D-fructose."[15]

76. One food regulator has excluded allulose from its definition of sugars, and the way it did so confirms rather than undermines the point. Australia and New Zealand define "sugars" as "monosaccharides (other than D-allulose) and disaccharides." Australia New Zealand Food Standards Code, Standard 1.1.2, s. 1.1.2—2 (compilation no. 21, F2026C00526, in force June 9, 2026) (Austl. & N.Z.). The parenthetical was inserted by Food Standards (Application A1247) Variation, F2024L01377 (Austl.). A carve-out is required only for something that would otherwise fall within the definition. Neither Congress nor the FDA has adopted a comparable carve-out, and 21 C.F.R. § 101.9(c)(6)(ii) contains none.

77. Defendants use allulose in the Products as a sweetener, and says so. On its own website, in answer to the question "What do you use in your Sugar-Free Grüns?", Defendants state: "We use Allulose and OnoSweet™. Allulose is an FDA-approved, low-calorie, natural sugar substitute." Defendants thus describe the ingredient it uses to sweeten the Products as a substitute for sugar.[16]

78. Defendants' own net-carbohydrate equation treats allulose as a carbohydrate present in the Products, and subtracts it to arrive at the "1 g Net Carbs" figure. Defendants cannot subtract the stated quantity of allulose from a Product's carbohydrate content on one panel and declare on another that the same serving contains no more than half a gram of sugars.

---

[14] Youngji Han, Bo Ra Choi, So Young Kim, Seong-Bo Kim, Yang Hee Kim, Eun-Young Kwon & Myung-Sook Choi, Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial, 10 Nutrients 2010, at 1–2 (2018).

[15] *Id.* at 1.

[16] Grüns, Superfoods Greens Gummies — Product FAQ, https://Grüns.co/products/Grüns (last visited Aug. 19, 2026) (Ex. 7).

**F. Allulose Has Not Been Established as Safe Outside the United States.**

79. The European Food Safety Authority assessed allulose as a novel food and reached this conclusion: "Based on the available data, the Panel concludes that the safety of the NF D-allulose cannot be established."[17]

80. Allulose may not lawfully be sold as a food in the European Union. It does not appear on the Union list of authorised novel foods. Commission Implementing Regulation 2017/2470, 2017 O.J. (L 351) 72 (EU). Under Regulation 2015/2283, art. 6(2), 2015 O.J. (L 327) 1 (EU), "[o]nly novel foods authorised and included in the Union list may be placed on the market within the Union as such, or used in or on foods, in accordance with the conditions of use and the labelling requirements specified therein." Five applications for authorisation remain pending.

81. Allulose is likewise not authorised in Great Britain. The application for its approval as a novel food remains at the risk-assessment stage and has not proceeded to risk management or authorisation.[18]

82. Nor is allulose authorised in Brazil, where the National Health Surveillance Agency has confirmed that it does not appear among the substances authorised for use as a sweetener or food ingredient, and on that ground has prohibited the sale, distribution, importation, advertising and use of an allulose product.[19]

---

[17] EFSA Panel on Nutrition, Novel Foods and Food Allergens, Safety of D-allulose as a novel food pursuant to Regulation (EU) 2015/2283, 23 EFSA J. e9468 (2025) (adopted May 6, 2025), doi:10.2903/j.efsa.2025.9468.

[18] Food Standards Agency & Food Standards Scotland, Register of Regulated Product Applications, RP-1130 (Allulose) (applicant Savanna Ingredients GmbH) (status: in progress; phase of assessment: risk assessment), https://data.food.gov.uk/regulated-product-applications/products-list/RP-1130 (last visited Aug. 25, 2026).

[19] Resolução-RE No. 5.157, de 19 de dezembro de 2025, Diário Oficial da União de 22.12.2025 (Braz.); Agência Nacional de Vigilância Sanitária, Anvisa proíbe alimento com ingrediente não autorizado (Dec. 22, 2025), https://www.gov.br/anvisa/pt-br/assuntos/noticias-anvisa/2025/anvisa-proibe-alimento-com-ingrediente-nao-autorizado (last visited Aug. 25, 2026).

83. Allulose is not permitted for sale in Canada. It does not appear on Health Canada's List of Permitted Sweeteners.[20] Nor does allulose appear among the novel foods for which Health Canada has completed a safety assessment; Health Canada has published no novel food decision permitting it.[21] The Regulations provide that "[n]o person shall sell or advertise for sale a novel food unless" the manufacturer or importer of that food "has notified the Minister in writing of his or her intention" to do so and "has received a written notice from the Minister" under the applicable subsection.[22]

84. Published human studies report gastrointestinal effects, and the body of evidence is thin. Commenting to the FDA on its draft allulose guidance, the Center for Science in the Public Interest — which supported excluding allulose from the declared total and added sugars on metabolic grounds — nonetheless wrote that "it is precisely because allulose is poorly absorbed that we are concerned about its potential adverse effects, such as nausea, bloating, headache, diarrhea, and abdominal pain," that "[t]o our knowledge, those adverse effects have been explored in only two studies—both unblinded and non-randomized, and one unavailable on PubMed," and that those studies are "thoroughly inadequate to determine the potential impact of allulose on gastrointestinal symptoms in the population as a whole."[23] It added that it was "particularly

[20] Health Canada, 9. List of Permitted Sweeteners (Lists of Permitted Food Additives) (published Dec. 18, 2024, superseding the list of July 11, 2024), https://www.canada.ca/en/health-canada/services/food-nutrition/food-safety/food-additives/lists-permitted/9-sweeteners.html (last visited Aug. 25, 2026).
[21] Health Canada, Completed Safety Assessments of Novel Foods Including Genetically Modified (GM) Foods, https://www.canada.ca/en/health-canada/services/food-nutrition/genetically-modified-foods-other-novel-foods/approved-products.html (last visited Aug. 25, 2026).
[22] Food and Drug Regulations, C.R.C., c. 870, s. B.28.002(1) (Can.).
[23] Comments of the Center for Science in the Public Interest on The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels, Draft Guidance for Industry, Docket No. FDA-2019-D-0725, at 1 (June 17, 2019),

concerned that these adverse effects may harm children and people with irritable bowel syndrome, a condition that is estimated to affect 10 to 12 percent of the population."[24] The Center recommended that labels state: "Excess consumption of allulose may cause diarrhea or other adverse gastrointestinal effects."[25]

85. The two studies the Center referred to were, at the time of its comment, the only human tolerance studies of allulose. In the later of them, a controlled trial in thirty healthy adults, the authors reported "significantly higher frequencies of symptoms of diarrhea (p = 0.004), abdominal distention (p = 0.039), and abdominal pain (p = 0.031) after D-allulose intake" as against the same doses of sugar, and reported that increasing daily intake produced "incidences of severe nausea, abdominal pain, headache, anorexia, and diarrheal symptoms."[26] The authors cautioned that they had recruited only young subjects of normal body mass index, and that "considerably more symptoms may appear in individuals who are old, obese, or with certain metabolic and GI diseases."[27]

86. An independent 2026 randomized, double-blind trial of daily allulose intake in fifty healthy adults reported that "[t]he incidence of gastrointestinal symptoms was 48.0%, which were mild, transient, and most frequent on Days 1-3, with no significant intergroup differences."[28] The daily doses tested were 24 grams and 36 grams.[29] A consumer who takes one daily pack of the

---

https://www.cspi.org/sites/default/files/2022-03/allulose%20final%20from%20CSPI.pdf (last visited Aug. 24, 2026).

[24] *Id.*

[25] *Id.* at 6.

[26] Youngji Han et al., *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial*, 10 Nutrients 2010, at 1, 6 (2018).

[27] *Id.* at 9.

[28] L. Qi et al., *D-Allulose as a Low-Calorie Sweetener: A 30-Day Randomized, Double-Blind Study on Gastrointestinal Tolerance and Systemic Safety to Support Its Application in Healthy Diets*, 14 Food Sci. & Nutrition e72042 (2026).

[29] *Id.*

Original Product, one daily pack of the immün Products and one daily pack of the nütrops Product — three products Defendants sell together and directs the consumer to take once each per day — consumes 24 grams of allulose, the lower of the two doses at which that incidence was recorded.[30]

87. Defendants sell the Products to children. The Kids Product is marketed for children aged 2 to 13, and each of Defendants' children's gummies is offered in a Sugar Free version sweetened with allulose. The Center for Science in the Public Interest identified children as the most exposed population. Under the heading "Exposure to Allulose in Children Raises Concerns," it wrote that "children aged 2-12 years (users only) are estimated to consume the highest amounts of allulose, on a body weight basis," and that "[s]ignificantly, the 90th percentile dose for children is at or above some of the maximum tolerable doses derived from the 2007 and 2018 studies in adults."[31]

88. Under the heading "Safety Assessments of Allulose Failed to Address its Likely Adverse Effects in Children or Adults," the same comment stated that the animal reference levels "fail to adequately capture symptoms such as nausea, bloating, headache, diarrhea, abdominal pain, and other symptoms that are reported in the human studies," and that the Center "is concerned that consumers, especially children, will experience diarrhea and other symptoms from this poorly digested carbohydrate."[32] It observed that the human tolerance studies had excluded the most exposed population: "Children, who are predicted to have the highest g/kg-bw intake of allulose . . . , were not included."[33] And it asked the agency to "take into account that children, because of their small size and propensity for eating sweets, are at greater risk of adverse effects."[34]

---

[30] *Id.*
[31] CSPI Allulose Comments, supra, at 4.
[32] *Id.* at 4–5.
[33] *Id.* at 3.
[34] *Id.* at 6.

### G. G. The Federal Labeling Requirements Governing "Sugar Free" Claims on Dietary Supplements.

89. Congress authorized the Food and Drug Administration to issue regulations governing the labeling of food, 21 U.S.C. § 371, and to prescribe requirements for nutrition labeling and for nutrient content claims, *id.* §§ 343(q), 343(r). A dietary supplement, with exceptions not relevant here, "shall be deemed to be a food within the meaning of this chapter." *Id.* § 321(ff).

90. A food is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 343(a)(1).

91. The regulations governing nutrient content claims apply to dietary supplements by their own terms: "This section and the regulations in subpart D of this part apply to foods that are intended for human consumption and that are offered for sale, including conventional foods and dietary supplements." 21 C.F.R. § 101.13(a) (2026). Section 101.60 is within subpart D. *See* 21 C.F.R. pt. 101, subpt. D (2026).

92. A nutrient content claim is "[a] claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 (that is, a nutrient content claim)." *Id.* § 101.13(b). Such a claim "may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D of this part or in part 105 or part 107 of this chapter." *Id.*

93. Whether a statement is a nutrient content claim turns on where it appears. Information required or permitted to be declared in nutrition labeling "and that appears as part of the nutrition label, is not a nutrient content claim and is not subject to the requirements of this section." *Id.* § 101.13(c). But "[i]f such information is declared elsewhere on the label or in

labeling, it is a nutrient content claim and is subject to the requirements for nutrient content claims." *Id.*

94. A claim that appears outside the panel required by § 101.9 or § 101.36 is a nutrient content claim, and a sugar content claim is governed by § 101.60. *Id.* §§ 101.13(c), 101.60.

95. Section 101.60 conditions any sugar content claim on the food being "labeled in accordance with § 101.9, § 101.10, or § 101.36, as applicable." *Id.* § 101.60(a)(3). Section 101.36 governs "[n]utrition labeling of dietary supplements." *Id.* § 101.36.

96. The definition of "Sugar Free" itself addresses dietary supplements. It conditions the claim on the food being "labeled 'low calorie' or 'reduced calorie' or bear[ing] a relative claim of special dietary usefulness . . . or, if a dietary supplement, [meeting] the definition in paragraph (b)(2) of this section for 'low calorie' but [being] prohibited by §§ 101.13(b)(5) and 101.60(a)(4) from bearing the claim." *Id.* § 101.60(c)(1)(iii)(A).

97. Section 101.60 further provides that "[t]he claims provided for in paragraph (c)(1) and (c)(2) of this section may be used on labels or in labeling of dietary supplements of vitamins or minerals that are intended specifically for use by infants and children less than 2 years of age." *Id.* § 101.60(c)(4).

98. Where the regulations exclude dietary supplements, they say so. The "reduced sugar" claim in § 101.60(c)(5) is available to foods "except meal products . . . , main dish products . . . , and dietary supplements of vitamins or minerals." *Id.* § 101.60(c)(5). Section 101.13(b)(5) provides that "[f]or dietary supplements, claims for calories, fat, saturated fat, and cholesterol may not be made" on products meeting the "calorie free" or "low calorie" criteria, id. § 101.13(b)(5), and § 101.60(a)(4) provides that "[f]or dietary supplements, claims regarding calories may not be

made" on such products, id. § 101.60(a)(4). Paragraph (c)(1) contains no such exclusion. *Id.* § 101.60(c)(1).

99. Section 101.60(c)(1) provides that a food "may not be labeled" with the terms "Sugar Free," "free of sugar," "no sugar," "zero sugar," "without sugar," "sugarless," "trivial source of sugar," "negligible source of sugar," or "dietarily insignificant source of sugar" unless, among other requirements:

> The food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving or, in the case of a meal product or main dish product, less than 0.5 g of sugars per labeled serving; and
>
> The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar[.]"[35]

100. Section 101.60(c)(1)(iii) imposes a third requirement, that the food be labeled "low calorie" or "reduced calorie," bear a qualifying relative claim, or carry one of the statements "not a reduced calorie food," "not a low calorie food," or "not for weight control." *Id.* § 101.60(c)(1)(iii). The three requirements are conjunctive.

101. For a dietary supplement, serving size "shall be determined in accordance with §§ 101.9(b) and 101.12(b), Table 2." *Id.* § 101.36(b)(1)(i).

102. Table 2 to § 101.12(b) sets out reference amounts customarily consumed. Under the heading "Miscellaneous," Table 2 assigns dietary supplements the reference amount: "The maximum amount recommended, as appropriate, on the label for consumption per eating occasion or, in the absence of recommendations, 1 unit, e.g., tablet, capsule, packet, teaspoonful, etc[.]" *Id.*

---

[35] 21 C.F.R. § 101.60(c)(1)(i)–(ii).

§ 101.12(b) tbl.2. Table 2 separately assigns a reference amount to "[s]pices, herbs (other than dietary supplements)": "1/4 tsp or 0.5 g if not measurable by teaspoon." *Id.* That parenthetical exclusion is necessary only if dietary supplements otherwise fall within Table 2. They do, and Table 2 assigns them their own reference amount.

103. Section 101.36 takes its definitions and increments from § 101.9. Total sugars is among the dietary ingredients that "shall be declared when they are present in a dietary supplement in quantitative amounts by weight that exceed the amount that can be declared as zero in nutrition labeling of foods in accordance with § 101.9(c)." *Id.* § 101.36(b)(2)(i). Those amounts "shall be expressed in the increments specified in § 101.9(c)(1) through (7)." *Id.* § 101.36(b)(2)(ii)(A).

104. Under § 101.9(c)(6)(ii), sugars content may be "expressed as zero" only "if the serving contains less than 0.5 gram." *Id.* § 101.9(c)(6)(ii).

### H. H. The Front-Panel "Sugar Free" Claim Violates 21 C.F.R. § 101.60(c)(1) (2026).

105. Each labeled serving of each Product contains the quantity of allulose set out at Paragraph 37 above, in each case as Defendants state on the Product's own package. Allulose is a sugar as defined in 21 C.F.R. § 101.9(c)(6)(ii).

106. Each labeled serving of each Product therefore contains at least 6 grams of sugars as defined in 21 C.F.R. § 101.9(c)(6)(ii) (2026) — and, in the case of the nütrops Product, 9 grams. The lowest of those figures is twelve times, and the highest is eighteen times, the 0.5-gram maximum in 21 C.F.R. § 101.60(c)(1)(i).

107. The Products' labels state "Suggested Use: Take no more than one pack per day" and declare a serving size of one daily pack. The maximum amount Defendants recommend for consumption per eating occasion is therefore one pack, and the reference amount customarily

consumed for each Product equals its labeled serving. The Products accordingly fail 21 C.F.R. § 101.60(c)(1)(i) on both measurement bases.

108. The Products also fail 21 C.F.R. § 101.60(c)(1)(ii). Allulose is an ingredient that is a sugar. It is listed in the ingredient statement. That listing is not followed by an asterisk referring to any of the three statements the regulation requires.

109. The requirements of 21 C.F.R. § 101.60(c)(1) are conjunctive. A food that fails any one of them may not be labeled "Sugar Free." The Products fail paragraphs (c)(1)(i) and (c)(1)(ii).

110. The Products may not lawfully be labeled "Sugar Free." Defendants label them "Sugar Free."

**I. In the Alternative, the "Total Sugars < 0.5 g" Declaration Violates 21 C.F.R. § 101.36(b)(2)(i).**

111. In the alternative, and independently of the front-panel claim, the Supplement Facts panels of the Products are themselves false.

112. Total sugars is a dietary ingredient that "shall be declared" in the Supplement Facts panel when present in an amount by weight exceeding the amount that can be declared as zero under 21 C.F.R. § 101.9(c). 21 C.F.R. § 101.36(b)(2)(i).

113. The amount that can be declared as zero under § 101.9(c) is less than 0.5 gram per serving. Each labeled serving of each Product contains between 6 and 9 grams of sugars, as set out at Paragraph 37 above. Every one of those amounts exceeds that threshold by at least a factor of twelve, and Defendants were required to declare it.

114. As to the Original Product, the Firecracker Product, the Mango Product, the Minions Product, the Raspberry Lemonade Product, the Kids Product, the Kids Minions Product, the Kids Firecracker Product and the Kids Raspberry Lemonade Product, Defendants instead declared "Total Sugars < 0.5 g." That declaration is false. It understates the sugars content of a

labeled serving by at least 5.5 grams and, in the case of the five adult Products, by more than 7.5 grams.

115. As to the immün Products and the nütrops Product, Defendants went further and declared “Total Sugars 0 g.” Under 21 C.F.R. § 101.9(c)(6)(ii), sugars content may be “expressed as zero” only “if the serving contains less than 0.5 gram.” A labeled serving of the immün Products contains 7 grams of allulose, and a labeled serving of the nütrops Product contains 9 grams, in each case as Defendants state on the same package. Those declarations of zero are false.

116. Neither the immün Products nor the nütrops Product declares any amount of added sugars at all. Their Supplement Facts panels carry no “Includes . . . Added Sugars” line.

117. As to the Original Product, the Firecracker Product, the Mango Product, the Minions Product, the Raspberry Lemonade Product, the Kids Product, the Kids Minions Product, the Kids Firecracker Product and the Kids Raspberry Lemonade Product, Defendants also declared “Includes 0 g Added Sugars.” That declaration is false for the same reason. Added sugars “are either added during the processing of foods, or are packaged as such, and include sugars (free, mono- and disaccharides) . . . .” 21 C.F.R. § 101.9(c)(6)(iii). Allulose is a free monosaccharide, and Defendants add it to the Products during processing. It is therefore an added sugar within that definition, and the quantity added exceeds by many times the amount that may be “expressed as zero” under § 101.9(c)(6)(ii).

**J. The FDA Has Not Authorized Either Statement.**

118. On October 19, 2020, the FDA announced the availability of a final guidance for industry entitled "*The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels*." *Food Labeling: The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels; Guidance for Industry; Availability*, 85 Fed. Reg.

66,217 (Oct. 19, 2020), https://www.govinfo.gov/content/pkg/FR-2020-10-19/pdf/2020-22901.pdf (last visited Aug. 24, 2026).

119. The guidance announced the agency's "intent to exercise enforcement discretion for the exclusion of allulose from the amount of Total Sugars and Added Sugars declared on the Nutrition Facts and Supplement Facts label and use of a general factor of 0.4 calories per gram (kcal/g) for allulose when calculating declarations on Nutrition and Supplement Facts labels." *Id.* at 66,217–18.

120. The guidance is not a regulation. It states on its face: "It does not establish any rights for any person and is not binding on FDA or the public. You can use an alternative approach if it satisfies the requirements of the applicable statutes and regulations." It further states: "FDA's guidance documents, including this guidance, do not establish legally enforceable responsibilities. Instead, guidances describe our current thinking on a topic and should be viewed only as recommendations, unless specific regulatory or statutory requirements are cited." FDA Allulose Guidance, *supra*, at 1. It did not amend 21 C.F.R. § 101.9(c)(6)(ii): the agency stated that it would exercise enforcement discretion "pending future rulemaking regarding amending the definition of 'Total Sugars.'" *Id.* at 8. No such rulemaking has occurred. The definition in § 101.9(c)(6)(ii) remains in force in the form quoted above.

121. The guidance did not amend 21 C.F.R. § 101.60. It does not mention "Sugar Free." It does not mention § 101.60. It does not mention § 101.13. It does not address nutrient content claims of any kind. Apart from a reminder that allulose must appear in the ingredient statement, the guidance addresses only what is declared within the Nutrition Facts and Supplement Facts panels.

122. The guidance itself describes allulose as “a monosaccharide that is an epimer of D-fructose,” *id.* at 6, and requires that allulose “be declared in the ingredient statement in accordance with 21 CFR 101.4 if it is present in a product so that consumers can determine when it is an ingredient in a food.” *Id.* at 9.

123. A statement by a federal agency that it does not presently intend to bring an enforcement action is not a determination that the conduct is lawful, and it is not permission to make the statement on the front of a package. The requirement in 21 C.F.R. § 101.60(c)(1) is unaffected by the guidance and has at all relevant times been in force.

**K. Plaintiffs’ Claims Impose Requirements Identical to Federal Requirements.**

124. Federal law prohibits a State from establishing or continuing in effect “any requirement respecting any claim of the type described in section 343(r)(1) of this title made in the label or labeling of food that is not identical to the requirement of section 343(r) of this title.” 21 U.S.C. § 343-1(a)(5). It does not prohibit a State from imposing a requirement that is identical.

125. The federal requirement is definite and numerical. A food that does not contain less than 0.5 gram of sugars both per reference amount customarily consumed and per labeled serving may not be labeled “Sugar Free” or any similar term. 21 C.F.R. § 101.60(c)(1)(i) (2026). Sugars means all free mono- and disaccharides. *Id.* § 101.9(c)(6)(ii).

126. Plaintiffs ask this Court to hold Defendants liable under State law for labeling a dietary supplement “Sugar Free” when it contains between 6 and 9 grams of sugars per labeled serving. That is the identical standard. Plaintiffs seek nothing additional to it and nothing different from it.

127. Plaintiffs’ alternative claim is identical in the same way. Federal law prohibits a State from establishing “any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q) of this title.” 21 U.S.C. § 343-1(a)(4). It does not prohibit a State

from imposing a requirement that is identical. Federal law requires that total sugars be declared in the Supplement Facts panel when present above the § 101.9(c) zero threshold. 21 C.F.R. § 101.36(b)(2)(i). Plaintiffs ask this Court to hold Defendants liable under State law for declaring a figure that is false under that requirement, and for nothing else.

128. Plaintiffs do not seek to require any statement, disclaimer, warning or format that federal law does not require. Plaintiffs do not challenge any statement that federal law authorizes.

**L. Defendants' "Sugar Free" Claim Exploits Consumers' Demand for Products Without Sugar.**

129. Consumers rely on front-panel label statements when selecting products. Consumers are not chemists, and are not in a position to determine, from an ingredient list, whether an ingredient named "allulose" is a sugar.

130. A statement that a product is "Sugar Free" is an absolute statement. It admits of no degree. A reasonable consumer reading "Sugar Free" on the front of a package understands the product to contain no sugar.

131. Consumers seek to limit sugar intake for reasons including weight management, dental health, diabetes and blood-glucose management, and general health. Defendants market the Products to consumers who are attentive to their health. The front panel of the Products states "COMPREHENSIVE NUTRITION."

132. The FDA has made the same finding about consumers' need for accurate sugar information. In the rulemaking that added the "Added Sugars" declaration to the nutrition and supplement labels, the agency concluded that "[m]andatory labeling that provides information about the contribution to daily caloric intake of added sugars is necessary to ensure that full, factual information is imparted to consumers so they have access to the information needed to follow a healthy dietary pattern and will not be misled in purchasing decisions because they have no

information about added sugars content and further could not calculate it based on the other information on the label—total sugars content or ingredient labeling."[36] The agency further explained that "the ingredient information is not a substitute for the gram amount of added sugars," because "[a]n ingredient listing would not enable the consumer to understand the amount of added sugars in grams and therefore, the contribution of the food to the daily dietary recommended limit of less than 10 percent of calories from added sugars."[37]

133. Defendants' "Sugar Free" claim is designed to exploit a long-standing and well-documented consumer preference for foods and supplements marketed as containing no sugar. Consumers place significant weight on such labeling, and surveys and industry studies consistently show that no-sugar claims drive purchasing decisions.

134. Federal dietary guidance directs consumers to limit their intake of added sugars, and food labeling is the means by which consumers act on that guidance. As the Center for Science in the Public Interest wrote to the FDA in 2020:

> Food labeling has the potential to amplify the DGA's messages by providing consumers with clear, actionable information to help them make healthy choices and limit their sugar consumption. But too often, food labels bear claims that mislead consumers to select less healthy products that they believe to be healthy. Consumers seeking to adhere to the DGA guidance on added sugars may seek products labeled "reduced sugar" or products claiming to be low in total or added sugars.[38]

---

[36] *Food Labeling: Revision of the Nutrition and Supplement Facts Labels*, 81 Fed. Reg. 33,742, 33,759 (May 27, 2016) (to be codified at 21 C.F.R. pts. 101, 102), https://www.govinfo.gov/content/pkg/FR-2016-05-27/pdf/2016-11867.pdf (last visited Aug. 25, 2026).

[37] *Id.*

[38] Letter from Laura MacCleery, Sarah Sorscher & Eva Greenthal, Ctr. for Sci. in the Pub. Interest, to Susan T. Mayne, Dir., Ctr. for Food Safety & Applied Nutrition, U.S. Food & Drug Admin., at 2 (Jan. 9, 2020), https://www.cspi.org/sites/default/files/attachment/Low_Sugar_Letter-1.9.20.pdf (last visited Aug. 24, 2026).

135. The passage appears in the letter under the heading "Reducing added sugar consumption is a public health priority, and misleading labeling inhibits progress on this priority."

136. Consumer organizations have identified the labeling of alternative sweeteners as a particular source of that confusion. The National Consumers League has written:

> Statements like these turn the supermarket aisle into a minefield of misleading claims that are not good for consumers who are trying to sort out health values. We urge the FDA to prohibit misleading labeling of alternative sweeteners in processed foods and beverages and to grant the citizens' petition for greater transparency in food labeling when it comes to these artificial sweeteners.[39]

137. Independent polling records that a majority of American adults actively avoid sugar. Gallup, pooling three national surveys of 3,529 adults, reported that "51% of all Americans actively avoid sugar," and that sugar ranked second of fifteen foods Americans said they try to avoid.[40]

138. Industry-funded research reaches the same conclusion. The International Food Information Council — a nonprofit funded by the food and beverage industry, which promotes research and messaging aligned with the interests of major food and beverage companies — reported in its 2025 Food & Health Survey under the heading "Three in four Americans are trying to limit or avoid sugars in their diet," that 75 percent of Americans are doing so, and that among those consumers 25 percent report "buying 'sugar-free' options when available."[41] That is the very claim Defendants place on the front of the Products. The same survey reports that "[l]ow in sugar"

---

[39] NCL staff, *Sweetened with What? Lack of Transparency and Misleading Claims Make Reducing Added Sugars Confusing*, Nat'l Consumers League (June 18, 2020), https://nclnet.org/added_sugars/ (last visited Aug. 24, 2026).

[40] Jim Norman, Americans Divided on Leaving Fat, Sugar, Salt Off the Plate, Gallup (Aug. 10, 2018), https://news.gallup.com/poll/240635/americans-divided-leaving-fat-sugar-salt-off-plate.aspx (last visited Aug. 24, 2026).

[41] International Food Information Council, 2025 IFIC Food & Health Survey: The Full Report 67, 71, 68, 75 (Jan. 2026), https://ific.org/research/2025-food-health-survey (last visited Aug. 28, 2026).

is the third most frequently selected criterion by which Americans define a healthy food, chosen by 34 percent, and ranking above every other nutrient-reduction criterion tested: "Low sodium" at 28 percent, "Low in total fat" at 17 percent, "Low calorie" at 16 percent and "Low carbohydrate" at 15 percent.[42]

139. A study conducted by the food retail industry itself ranks a sugar claim among the packaging descriptions with the greatest influence on purchasing. Surveying 2,022 United States grocery shoppers, the Food Marketing Institute and Label Insight found: "The product package descriptions that have the biggest impacts on purchase behaviors include no preservatives, high protein, no added hormones, low sugar, low sodium, free-from artificial flavors and whole grains."[43]

140. In the same table of forty-one packaging descriptions, "Low Sugar" ranked fourth, at 38 percent, and outranked "Low calorie," at 30 percent, by eight percentage points. In the industry's own study, therefore, a sugar claim outranked a calorie claim.[44]

141. Manufacturers act on that preference. Across 467 non-alcoholic beverage launches in the twelve months ended May 2024, approximately 35 percent of benefit claims related to sugar reduction — nearly three times the share claiming low or no calories, at 12 percent.[45]

142. Peer-reviewed and government research confirms that a sugar claim on the front of a package changes what consumers believe about the product. The research concerns the qualified

---

[42] Id. at 32.
[43] *The Transparency Imperative: Product Labeling from the Consumer Perspective*, Food Marketing Institute & Label Insight, at 4 (2018), https://www.fmi.org/forms/store/ProductFormPublic/the-transparency-imperative-product-labeling-from-the-consumer-perspective (last visited Aug. 24, 2026).
[44] FMI & Label Insight, The Transparency Imperative 26 (2018).
[45] Caleb Wilson, Reduced Sugar Emerges as Top Beverage Claim, Food Business News (Aug. 20, 2024), https://www.foodbusinessnews.net/articles/26640-reduced-sugar-emerges-as-top-beverage-claim (last visited Aug. 24, 2026) (reporting research by GlobalData).

claim "no added sugar," which on its face leaves room for sugar already present; even so, a material share of consumers read it to mean the product contains no sugar at all. The claim on the Products is unqualified. Reviewing the consumer-science literature, the bi-national food regulator of Australia and New Zealand found that "some consumers (4.3-50%) may not understand that 'no added sugar(s)' claims do not necessarily mean the food has no sugar," and that in studies using "larger, more representative samples" between "13.3% - 29%" of consumers "may be misled."[46]

143. That misunderstanding persists even where the sugar content is disclosed on the back of the package. The same review records that "[i]n one Australian study, this misunderstanding occurred for between 17% and 29% of participants, despite them having the option to view total sugar information on the back of pack." Consumers do not reliably correct a front-panel sugar claim by reading the back panel. The FDA reached a parallel conclusion in the rulemaking quoted above, when it held that the ingredient list "is not a substitute" for the sugars declaration.[47]

144. The same body of research records the effect of such a claim on perceived healthfulness. In a survey of 1,525 New Zealand shoppers, "36% participants (CI: 33-39%) incorrectly believed that this claim meant that the food was definitely healthy," with markedly higher rates among Māori, Asian, Pacific, low-income and lower-educated shoppers. In an Australian discrete-choice experiment, "[p]articipants were nearly 14 times more likely to perceive a product with the claim 'no added sugar, no added salt' as most healthy, compared to when this

---

[46] Food Standards Australia New Zealand, Consumer Evidence Summary: 'No Added Sugar(s)' Claims 13–14 (Nov. 17, 2023) (Supporting Document 1 to Proposal P1062), https://www.foodstandards.gov.au/sites/default/files/2023-11/SD1%20No%20Added%20Sugar%20Claims%20Social%20Science%20Summary%20%20at%20approval.pdf (last visited Aug. 24, 2026).
[47] FSANZ Consumer Evidence Summary, *supra*, at 13–14.

claim was absent."[48] And in a United States study of 1,051 consumers, a "no added sugar" claim ranked "second of the 30 attributes tested" in driving the perception that a product was better for the consumer.[49]

145. The Products present that risk in its most acute form, because the sweetener Defendants substituted is one that almost no consumer has ever heard of. In a November 2024 survey of 1,000 Americans, the International Food Information Council found that "[o]ne in eight (13%) survey takers have heard of allulose," and reported the finding under the heading "Most Americans have not heard of allulose."[50] The same survey asked which information on a package consumers would use to determine whether it contains a sweetener; 49 percent named the list of ingredients and 42 percent the Nutrition Facts label.[51] Because allulose is not declared on the Supplement Facts panel as a sugar, the only place on the Products where its presence is disclosed is a word that seven in eight American consumers have never encountered.

146. A reasonable consumer confronted with the front-panel statement "Sugar Free" is therefore in no position to detect that the Products contain between 6 and 9 grams of a sugar per serving. Nothing on the package states that allulose is a sugar. Defendants' own website describes allulose not as a sugar but as a "sugar substitute," and the Supplement Facts panel declares Total Sugars below 0.5 grams. Every disclosure on the package points the consumer away from the fact.

---

[48] FSANZ Consumer Evidence Summary, supra, at 15.
[49] FSANZ Consumer Evidence Summary, supra, at 15–16.
[50] 2024 IFIC Spotlight Survey: American Perceptions of Sweeteners in Foods & Beverages, International Food Information Council, at 6, 13 (Nov. 2024), https://ific.org/wp-content/uploads/2025/04/IFIC-Nov-Spotlight-Survey-Sweeteners.pdf (last visited Aug. 24, 2026).
[51] *Id.* at 17 (question directed to low- and no-calorie sweeteners; respondents were permitted two answers).

147. Consumers are consistently willing to pay a premium for food they believe to be healthier. A systematic review of twenty-six experiments found that in 88.5 percent of them, "consumers would pay a 5.6% to 91.5% (mean 30.7%) price premium for healthier foods."[52]

148. This evidence underscores that Defendants' "Sugar Free" representation is not incidental marketing puffery. It is a material claim that directly targets health-conscious consumers and materially influences purchasing decisions.

149. The "Sugar Free" claim is material. Defendants placed it on the front panel of the package, in a starburst device, because it is material. Defendants sell a cane-sugar version of the same gummy without that claim.

150. Each Plaintiff read and relied on the "Sugar Free" claim, understood it to mean that the Products contained no sugar, and did not receive the benefit of that bargain. Plaintiffs and members of the Class paid for a sugar-free dietary supplement and received a dietary supplement containing between 6 and 9 grams of sugars per serving.

151. Plaintiffs and members of the Class suffered actual damage, meaning pecuniary loss. They paid more for the Products than the Products were actually worth.

152. A dietary supplement that contains between 6 and 9 grams of sugars in every serving is worth less than a dietary supplement that contains none. The Products Plaintiffs and members of the Class received were worth less than the Products as Defendants represented them to be, and worth less than the price they paid.

153. Defendants charge a fixed surcharge for the "Sugar Free" version of a Product over the cane-sugar "Low Sugar" version of the same Product. On Defendants' own direct-to-consumer

[52] Mohammed Alsubhi et al., Consumer Willingness to Pay for Healthier Food Products: A Systematic Review, 24 Obesity Reviews e13525 (2023).

websites, a 28-pack of the Original Product is offered on subscription at $29.99 in its Low Sugar version and at $34.99 in its Sugar Free version, and as a one-time purchase at $66.65 and $73.32 respectively. The Minions Product and the Raspberry Lemonade Product are each offered at $32.79 against $37.79 on subscription, and at $70.38 against $77.05 as a one-time purchase. The immün Products, sold at immun.co, and the nütrops Product, sold at nutrops.co, are each offered at $29.99 against $34.99 on subscription, and at $66.65 against $73.32 for a single purchase. On every one of those five Products, across three of Defendants' websites, the Sugar Free version costs exactly $5.00 more on subscription and exactly $6.67 more for a single purchase. Where Defendants offer a two-person subscription, the surcharge doubles, to $10.00 and $13.34, which shows that it is charged per pack. The gummy, the pack count, the serving size, the declared Total Carbohydrate and the declared Dietary Fiber are the same in both versions of each Product. The sweetener and the "Sugar Free" claim are what differ, and Defendants charge for them. *See* Ex. 4.

154. The Products are a discretionary purchase. Neither Plaintiffs nor any member of the Class was under any necessity to purchase a greens gummy dietary supplement. Had Plaintiffs and members of the Class known that each serving of the Products contained between 6 and 9 grams of allulose and that allulose is a sugar, they would not have purchased the Products or would have paid substantially less for them.

155. Defendants knew the Products contained between 6 and 9 grams of allulose per serving. Defendants calculated that figure and printed it on the package. Defendants knew, or was reckless in not knowing, that allulose is a monosaccharide and therefore a sugar under 21 C.F.R. § 101.9(c)(6)(ii) (2026).

## CLASS ACTION ALLEGATIONS

156. Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and the Class and Subclasses defined below.

157. The Class Period runs from May 14, 2024, the date on which the first Sugar Free Product was made available for purchase,[53] through the date of judgment.

158. Plaintiffs seek to represent a nationwide class defined as: All persons in the United States who, during the Class Period, purchased the Products for personal, family or household use, and not for resale (the "Class").

159. Plaintiffs further seek to represent the following statewide Subclasses, each defined by place of purchase rather than by residence:

a. New York Subclass: All members of the Class who purchased the Products in the State of New York during the Class Period, represented by Plaintiff Ulberg.

b. California Subclass: All members of the Class who purchased the Products in the State of California during the Class Period, represented by Plaintiff Ebsary.

c. Pennsylvania Subclass: All members of the Class who purchased the Products in the Commonwealth of Pennsylvania during the Class Period, represented by Plaintiffs Petzel and Miller.

---

[53] Grüns Adult Greens Gummies Sugar Free Multivitamin & Prebiotic Fiber, 28 ct., Amazon, ASIN B0D44CQ9T4, https://www.amazon.com/dp/B0D44CQ9T4 (last visited Aug. 31, 2026) (product detail recording "Date First Available: May 14, 2024"). The Kids Sugar Free Product records a Date First Available of 13 August 2024. Grüns Superfood Gummies Multivitamin for Kids, Sugar Free, 28 ct., Amazon, ASIN B0DCPSNCQG, https://www.amazon.com/dp/B0DCPSNCQG (last visited Aug. 31, 2026).

160. The nationwide Class and the three Subclasses are together referred to as the "Classes." Each statutory count below is asserted on behalf of the Subclass of the State whose law it invokes, and by the Plaintiff who purchased in that State. The counts for breach of express warranty, breach of the implied warranty of merchantability and unjust enrichment are asserted on behalf of the Classes.

161. Excluded from the Class and each Subclass are Defendants, its officers, directors, employees, subsidiaries, parents and affiliates; the judicial officers assigned to this action and members of their immediate families and staff; all persons who purchased the Products for the purpose of resale; and all persons who timely and validly elect to be excluded from the Class.

162. Numerosity. Members of the Class and each Subclass are so numerous that their individual joinder is impracticable. Defendants state that its Products are "[a]vailable nationwide at Target, Walmart, Sprouts, Amazon and online at Grüns.co," and that it has "more than a million customers, 35,000-plus five-star reviews and millions of gummies shipped every day." Amazon's listing for the Original Product records more than ten thousand units purchased in a single month. On information and belief, members of the Class number in the tens of thousands and members of each Subclass number in the thousands. Their identities may be ascertained through Defendants' own sales and subscription records and those of its retailers.




Amazon Grüns brand store (last visited Aug. 14, 2026) (Ex. 8).

**ABOUT GRÜNS**

Founded in 2023, Grüns is changing the way people approach daily nutrition with the first comprehensive gummy on the market. Each daily sachet includes eight gummies packed with 60-plus organic fruits and vegetables and 20-plus essential vitamins and minerals, delivering the benefits of daily green powders, multivitamins and prebiotics in one simple, great-tasting format.

In 2024, Grüns expanded its lineup to meet the needs of all ages with Cubs, a gummy designed for kids, and Nütrops, a functional gummy for cognitive support. Today, Grüns has become a favorite among busy parents, wellness rookies and fitness fanatics alike, with more than a million customers, 35,000-plus five-star reviews and millions of gummies shipped every day.

Available nationwide at Target, Walmart, Sprouts, Amazon and online at grunss.co, Grüns offers a trusted, accessible way to help people feel better every day – without artificial colors, flavors or fillers and with rigorous third-party testing to ensure quality and efficacy.

Gotham FC and Grüns Forge Strategic Partnership Centered on Foundational Nutrition, Gotham FC (May 1, 2025) (quoting Defendants' own "About Grüns" statement).

163. Commonality and predominance. Common questions of law and fact exist as to all members of the Class and Subclasses and predominate over any questions affecting only individual members. Those questions include: whether allulose is a sugar as defined in 21 C.F.R. § 101.9(c)(6)(ii); whether each labeled serving of the Products contains between 6 and 9 grams of allulose; whether Defendants substituted the quantity of allulose stated on its label for the stated quantity of cane sugar in its comparator product; whether the Products may lawfully be labeled "Sugar Free" under 21 C.F.R. § 101.60(c)(1); whether the Products' Total Sugars declaration is false under 21 C.F.R. § 101.36(b)(2)(i); whether the "Sugar Free" claim is likely to deceive a reasonable consumer; whether the claim is material; whether it constitutes a deceptive act or practice under New York General Business Law § 349 and false advertising under § 350; whether it violates California Civil Code § 1770(a), the Unfair Competition Law and the False Advertising Law; whether Defendants breached an express warranty; whether Defendants breached the implied warranty of merchantability; whether Defendants were unjustly enriched; and the appropriate measure of damages and restitution.

164. The common questions predominate because they turn on the composition of the Products and the content of a uniform label, not on the circumstances of any individual purchaser. The quantity of allulose in a serving is a fact about the Products. The words on the package are the same for every purchaser.

165. Uniform exposure. The "Sugar Free" claim appears on the front panel of each Product, in a starburst device, in the ordinary field of view of a consumer selecting the Products from a shelf or viewing them online. Each purchaser of the Products was exposed to it in the ordinary course of selecting the Products.

166. Typicality. Each Plaintiff's claims are typical of the claims of the Class and of the Subclass that Plaintiff represents. Each purchased the same Products bearing the same representations, in reliance on the same representations, and suffered the same kind of loss. Their claims arise from the same course of conduct by Defendants.

167. Adequacy. Plaintiffs will fairly and adequately protect the interests of the Class and Subclasses. Plaintiffs have no interests antagonistic to the Class or Subclasses, have retained counsel experienced in the prosecution of consumer class actions, and intend to prosecute this action vigorously.

168. Superiority. A class action is superior to other available means for the fair and efficient adjudication of this controversy. The damages suffered by each individual member of the Class are small relative to the expense and burden of individual litigation, and it would be impracticable for members of the Class to obtain effective relief individually.

169. Ascertainability. Members of the Class and Subclasses can be identified by objective criteria. On information and belief, Defendants and its retailers maintain records of Product sales, including subscription and account records for purchases made through Grüns.co and retailer loyalty and electronic-receipt records for purchases made in stores.

170. Defendants have acted and refused to act on grounds generally applicable to the Class and Subclasses, thereby making appropriate final injunctive relief with respect to the Class and Subclasses as a whole under Rule 23(b)(2).

## CAUSES OF ACTION

### <u>COUNT I: Violation of N.Y. Gen. Bus. Law § 349</u><br>(On behalf of the New York Subclass)

171. Plaintiff incorporates by reference and realleges the allegations contained in Paragraphs 1 through 170 above as if fully set forth herein.

172. Plaintiff Ulberg brings this cause of action on behalf of herself and the members of the New York Subclass against Defendants.

173. New York General Business Law § 349(a) declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a).

174. Defendants' labeling of the Products "Sugar Free," and its declaration that a serving contains no more than half a gram of Total Sugars, are consumer-oriented acts directed at the public at large. They appear on every package of the Products sold in New York.

175. The acts are materially misleading to a reasonable consumer acting reasonably under the circumstances. A reasonable consumer reading "Sugar Free" on the front of a package understands the product to contain no sugar. The Products contain between 6 and 9 grams of sugars per serving.

176. The deceptive acts occurred in New York, where Plaintiff was exposed to the Products' labeling and purchased the Products at Target retail store locations in New York.

177. Plaintiff and the New York Subclass suffered injury. They paid a price for the Products that exceeded the value of what they received.

178. Plaintiff seeks actual damages or fifty dollars, whichever is greater, and, because Defendants acted knowingly, treble damages up to one thousand dollars, together with reasonable attorneys' fees, pursuant to N.Y. Gen. Bus. Law § 349(h).

**COUNT II: Violation of N.Y. Gen. Bus. Law § 350**
**(On behalf of the New York Subclass)**

179. Plaintiff incorporates by reference and realleges the allegations contained in Paragraphs 1 through 170 above as if fully set forth herein.

180. Plaintiff Ulberg brings this cause of action on behalf of herself and the members of the New York Subclass against Defendants.

181. New York General Business Law § 350 declares unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 350.

182. The "Sugar Free" claim on the front panel of the Products is advertising. It is false: each labeled serving contains between 6 and 9 grams of allulose, which is a sugar.

183. Plaintiff relied on that advertising and suffered injury as a result.

184. Plaintiff seeks actual damages or five hundred dollars, whichever is greater, and treble damages up to ten thousand dollars, together with reasonable attorneys' fees, pursuant to N.Y. Gen. Bus. Law § 350-e(3).

**COUNT III: Violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750–1784**
**(On behalf of the California Subclass)**
**(Injunctive and Declaratory Relief Only)**

185. Plaintiff Ebsary incorporates by reference and realleges the allegations contained in Paragraphs 1 through 170 above as if fully set forth herein.

186. Plaintiff Ebsary brings this cause of action on behalf of herself and the members of the California Subclass against Defendants.

187. The Products are "goods" and Plaintiff and the California Subclass are "consumers" within the meaning of the Consumers Legal Remedies Act. Cal. Civ. Code § 1761.

188. Defendants violated California Civil Code § 1770(a) by representing that the Products have characteristics and benefits that they do not have, id. § 1770(a)(5); by representing that the Products are of a particular standard, quality or grade when they are of another, id. § 1770(a)(7); and by advertising the Products with intent not to sell them as advertised, id. §

1770(a)(9). The Products are labeled “Sugar Free” and contain between 6 and 9 grams of sugars per labeled serving.

189. The particulars are as follows. Plaintiff Ebsary purchased the Grüns Superfoods Greens Gummies (Sugar-Free) in California, both from Defendants directly at https://Grüns.co and from Sprouts retail stores, beginning in 2025 and continuing to the present — a period falling wholly within the period during which Defendants labeled the Products “Sugar Free,” as alleged at Paragraph 42 above. Before purchasing, Plaintiff read the words “Sugar Free” printed in the starburst device on the front panel of the package. Plaintiff understood those words to mean that the product contained no sugar. The package Plaintiff purchased bore the “Sugar Free” claim, declared in its Supplement Facts panel that a labeled serving contains no more than half a gram of Total Sugars, and stated on another panel that the same serving contains 8 grams of allulose. The officers, employees and agents of Defendants responsible for the Products' packaging caused each of those statements to be printed.

190. This Count seeks injunctive and declaratory relief only. An action for injunctive relief brought under the specific provisions of California Civil Code § 1770 “may be commenced without compliance with subdivision (a).” Cal. Civ. Code § 1782(d). Plaintiff does not at this time seek damages, restitution or any other monetary relief under the Consumers Legal Remedies Act. Not less than thirty days after the commencement of this action, and after compliance with § 1782(a), Plaintiff may amend this Complaint without leave of court to include a request for damages. *Id.*

**COUNT IV: Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200–17210**
**(On behalf of the California Subclass)**

191. Plaintiff Ebsary incorporates by reference and realleges the allegations contained in Paragraphs 1 through 170 above as if fully set forth herein.

192. Plaintiff Ebsary brings this cause of action on behalf of herself and the members of the California Subclass against Defendants.

193. The Unfair Competition Law prohibits “any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.” Cal. Bus. & Prof. Code § 17200. Plaintiff pleads each prong.

194. Unlawful. Defendants’ conduct violates 21 C.F.R. §§ 101.60(c)(1) and 101.36(b)(2)(i) (2026), and violates California’s Sherman Food, Drug, and Cosmetic Law, which adopts the federal food labeling requirements as the law of California. Cal. Health & Safety Code § 110100. This prong rests on the regulatory allegations above and does not depend on any allegation of deception.

195. Unfair. Selling a dietary supplement containing between 6 and 9 grams of sugars per labeled serving under a front-panel claim that federal regulation forbids offends the policy embodied in those regulations. The harm to consumers is substantial, is not outweighed by any countervailing benefit, and is not one consumers could reasonably have avoided.

196. Fraudulent. The “Sugar Free” claim is likely to deceive a reasonable member of the public. The circumstances of the fraudulent conduct are pleaded with particularity at Paragraph 189 above, which Plaintiff incorporates into this Count: the who, what, when, where and how of Plaintiff's purchase, the words read, the understanding formed, and the officers, employees and agents of Defendants responsible for the label.

197. Plaintiff Ebsary lost money or property as a result and has standing under Cal. Bus. & Prof. Code § 17204. Plaintiff Ebsary paid the retail price of the Products, which were worth less than that price.

198. Plaintiff Ebsary lacks an adequate remedy at law for the equitable relief sought under this Count. The unlawful-prong claim pleaded above rests on violations of California's Sherman Food, Drug, and Cosmetic Law, which affords no private right of action. Plaintiff must therefore plead those violations as predicate acts under the Unfair Competition Law in order to obtain any relief for them, and the only relief the Unfair Competition Law affords is equitable. Damages are not available under this Count, and no other cause of action pleaded in this Complaint permits Plaintiff Ebsary to recover for the Sherman Law violations alleged. Plaintiff seeks restitution and such other equitable relief as the Court deems proper under Cal. Bus. & Prof. Code § 17203.

**COUNT V: Violation of the California False Advertising Law,**
**Cal. Bus. & Prof. Code §§ 17500–17509**
**(On behalf of the California Subclass)**

199. Plaintiff Ebsary incorporates by reference and realleges the allegations contained in Paragraphs 1 through 170 above as if fully set forth herein.

200. Plaintiff Ebsary brings this cause of action on behalf of herself and the members of the California Subclass against Defendants.

201. California's False Advertising Law prohibits the dissemination of any statement concerning goods which is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

202. The "Sugar Free" claim on the front panel of the Products is untrue and misleading. Defendants knew it was untrue: Defendants calculated each Product's allulose figure and printed

it on that Product's own package. The circumstances of the untrue and misleading statement are pleaded with particularity at Paragraph 189 above, which Plaintiff Ebsary incorporates into this Count.

203. Plaintiff Ebsary lost money or property as a result and has standing under Cal. Bus. & Prof. Code § 17535. Plaintiff Ebsary lacks an adequate remedy at law for the equitable relief sought under this Count. The False Advertising Law affords no damages remedy; it authorizes injunctive relief and restitution only. Further, liability under the False Advertising Law requires no proof that Defendants acted with knowledge or intent, and no individualized proof of any class member's understanding of the representation, so a claim sounding in damages would not afford Plaintiff Ebsary and the California Subclass the same relief on the same proof.

**COUNT VI: Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 to 201-9.3**
(On behalf of the Pennsylvania Subclass)

204. Plaintiffs Petzel and Miller incorporate by reference and reallege the allegations contained in Paragraphs 1 through 170 above as if fully set forth herein.

205. Plaintiffs Petzel and Miller bring this cause of action on behalf of themselves and the members of the Pennsylvania Subclass against Defendants.

206. The Unfair Trade Practices and Consumer Protection Law declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by subclauses (i) through (xxi) of clause (4) of section 2 of this act." 73 Pa. Stat. Ann. § 201-3.

207. "Trade" and "commerce" mean "the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or

commerce directly or indirectly affecting the people of this Commonwealth." *Id.* § 201-2(3). Defendants are a "person" within the meaning of the Act, which defines that term to include "corporations." *Id.* § 201-2(2). Defendants' labeling, advertising, offering for sale and sale of the Products in Pennsylvania is trade or commerce within the meaning of the Act.

208. Defendants engaged in an unfair or deceptive act or practice within the meaning of § 201-2(4)(v) by "[r]epresenting that goods . . . have . . . characteristics, ingredients, uses, benefits or quantities that they do not have." *Id.* § 201-2(4)(v). Defendants represented on the front panel of every Product that the Product is "Sugar Free" when each labeled serving of that Product contains between 6 and 9 grams of allulose, which is a sugar as defined in 21 C.F.R. § 101.9(c)(6)(ii) (2026).

209. Defendants engaged in an unfair or deceptive act or practice within the meaning of § 201-2(4)(vii) by "[r]epresenting that goods . . . are of a particular standard, quality or grade . . . if they are of another." *Id.* § 201-2(4)(vii). Federal regulation permits the term "Sugar Free" only where a food "contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving." 21 C.F.R. § 101.60(c)(1)(i). No Product meets that standard.

210. Defendants engaged in an unfair or deceptive act or practice within the meaning of § 201-2(4)(xxi) by "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." Id. § 201-2(4)(xxi). Defendants printed the words "Sugar Free" on the front panel of each Product and, on another panel of the same package, printed an equation subtracting between 6 and 9 grams of allulose from that Product's total carbohydrate. A consumer reading the front panel is told the Product contains no sugar; a consumer reading the

Supplement Facts panel is told the same serving contains no more than half a gram of Total Sugars, and on two product lines none at all. Both statements cannot be true.

211. Separately, independently, and in the alternative, Defendants engaged in unfair or deceptive acts or practices by declaring in the Supplement Facts panel of each Product that a labeled serving contains no more than half a gram of Total Sugars, and on the immün Products and the nütrops Product that a labeled serving contains no Total Sugars at all, when each such serving contains between 6 and 9 grams of sugars.

212. Plaintiffs Petzel and Miller each purchased the Products in large part because of Defendants' representation that the Products were sugar free. Each understood that representation to mean that the Products contained no sugar. That understanding was reasonable, and the reliance of Plaintiffs Petzel and Miller on Defendants' representation was justifiable: the representation appeared on the front panel of the package in a starburst device, it used a term federal regulation defines, and nothing on the package disclosed that allulose is a sugar or qualified the claim in any way.

213. Plaintiffs Petzel and Miller each purchased the Products "primarily for personal, family or household purposes" and "thereby suffer[ed] . . . ascertainable loss of money or property" as a result of Defendants' unlawful conduct, within the meaning of 73 Pa. Stat. Ann. § 201-9.2(a). Each paid the retail price of the Grüns Superfoods Greens Gummies (Sugar-Free). The Products were worth less than the price paid, and Plaintiffs Petzel and Miller would not have purchased them, or would have paid less for them, had the labeling been truthful.

214. Defendants' unlawful conduct was the proximate cause of the ascertainable loss suffered by Plaintiffs Petzel and Miller and by the members of the Pennsylvania Subclass.

215. Plaintiffs Petzel and Miller and the members of the Pennsylvania Subclass are entitled to "recover actual damages or one hundred dollars ($100), whichever is greater," to an award in the Court's discretion of "up to three times the actual damages sustained," and to "costs and reasonable attorney fees." *Id.* § 201-9.2(a).

**COUNT VII: Breach of Express Warranty**
(On behalf of the Classes)

216. Plaintiffs incorporate by reference and reallege the allegations contained in Paragraphs 1 through 170 above as if fully set forth herein.

217. Plaintiffs bring this cause of action on behalf of themselves and the members of the Classes against Defendants.

218. Defendants, as the producer, marketer, distributor and seller of the Products, expressly warranted that the Products are "Sugar Free" and that a serving contains no more than half a gram of Total Sugars. Those affirmations of fact and descriptions of the goods became part of the basis of the bargain. See N.J. Stat. Ann. § 12A:2-313 (West 2026).

219. By labeling the Products "Sugar Free," Defendants made an affirmation of fact and a description of the goods. By declaring in the Supplement Facts panel that a serving contains no more than half a gram of Total Sugars, Defendants made a further affirmation of fact.

220. Those affirmations became part of the basis of the bargain. Plaintiffs and members of the Classes read them and purchased the Products in reliance on them.

221. The Products did not conform. Each labeled serving contained between 6 and 9 grams of allulose, which is a sugar.

222. On August 31, 2026, counsel for Plaintiffs sent Defendants written notice of the breach by certified mail, return receipt requested. This Complaint constitutes further notice of the breach.

223. Plaintiffs and members of the Classes suffered damages as a direct and proximate result of the breach.

**COUNT VIII: Breach of the Implied Warranty of Merchantability**
(On behalf of the Classes)

224. Plaintiffs incorporate by reference and reallege the allegations contained in Paragraphs 1 through 170 above as if fully set forth herein.

225. Plaintiffs bring this cause of action on behalf of themselves and the members of the Classes against Defendants.

226. Defendants are a merchant with respect to goods of the kind sold, and a warranty that the goods shall be merchantable was implied in each contract for their sale. *See* N.J.S.A. § 12A:2-314.

227. To be merchantable, goods must at least be adequately contained, packaged and labeled, and must conform to the promises or affirmations of fact made on the container or label. The Products were neither: they bore a "Sugar Free" claim that 21 C.F.R. § 101.60(c)(1) prohibits, and a Supplement Facts declaration that 21 C.F.R. § 101.36(b)(2)(i) renders false.

228. The Products were not merchantable. They did not conform to the affirmations of fact made on their container and label, and they were not labeled as federal regulation requires: they bore a "Sugar Free" claim that 21 C.F.R. § 101.60(c)(1) prohibits, and a Supplement Facts declaration that 21 C.F.R. § 101.36(b)(2)(i) renders false.

229. Plaintiffs and members of the Classes suffered damages as a direct and proximate result of the breach.

**COUNT IX: Unjust Enrichment**
(On behalf of the Classes)
**(In the Alternative)**

230. Plaintiffs incorporate by reference and reallege the allegations contained in Paragraphs 1 through 170 above as if fully set forth herein.

231. Plaintiffs bring this cause of action on behalf of themselves and the members of the Classes against Defendants, in the alternative to the foregoing Counts.

232. Plaintiffs and members of the Classes conferred a benefit on Defendants by purchasing the Products.

233. Defendants obtained that benefit through the unlawful labeling described above. Defendants retained the purchase price of a product it could not lawfully sell as labeled.

234. Defendants' retention of that benefit without payment of its value violates fundamental principles of justice, equity and good conscience.

235. Plaintiffs and members of the Classes are entitled to restitution and to disgorgement of the amounts by which Defendants were unjustly enriched.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

a. For an order certifying the nationwide Class and the New York, California and Pennsylvania Subclasses under Rule 23 of the Federal Rules of Civil Procedure, naming each Plaintiff as representative of the Class and of the Subclass in which that Plaintiff purchased, and naming Plaintiffs' attorneys as Class Counsel;

b. For an order finding in favor of Plaintiffs and the Class and Subclasses on all counts asserted herein;

c. For compensatory damages in an amount to be determined by the Court and/or jury;

d. For statutory and treble damages pursuant to N.Y. Gen. Bus. Law §§ 349(h) and 350-e(3); and actual damages or one hundred dollars, whichever is greater, and up to treble damages, pursuant to 73 Pa. Stat. Ann. § 201-9.2(a);

e. For prejudgment and postjudgment interest on all amounts awarded, to the extent allowable;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For an order enjoining Defendants from continuing the illegal practices detailed herein and compelling Defendants to undertake a corrective advertising campaign;

h. For injunctive and declaratory relief under the California Consumers Legal Remedies Act;

i. For an order awarding reasonable attorneys' fees, filing fees and costs of suit, including under N.Y. Gen. Bus. Law §§ 349(h) and 350-e(3), Cal. Civ. Code § 1780(e), 73 Pa. Stat. Ann. § 201-9.2(a);

j. For any and all other legal or equitable relief that the Court deems just and proper.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I certify that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated: August 31, 2026

Respectfully submitted,

**LITE DEPALMA GREENBERG & AFANADOR, LLC**

*/s/ Joseph J. DePalma*
Joseph J. DePalma
Susana Cruz Hodge
Catherine B. Derenze
570 Broad Street, Suite 1201
Newark, NJ 07102
(973) 623-3000
jdepalma@litedepalma.com
scruzhodge@litedepalma.com
cderenze@litedepalma.com

Jennifer Kraus-Czeisler*
Todd McClelland*
Christopher Hurld*
**STERLINGTON PLLC**
530 Fifth Avenue, Suite 804
New York, NY 10036
(212) 433-2993
todd.mcclelland@sterlingtonlaw.com
jen.czeisler@sterlingtonlaw.com
christopher.hurld@sterlingtonlaw.com

*Attorneys for Plaintiffs*

**pro hac vice* forthcoming